120 P.3d 616 (2005)
BELLEVUE JOHN DOES 1-11, Federal Way John Does 1-5 and Jane Does 1-2 and Seattle John Does 1-13 and John Doe, Appellants,
v.
BELLEVUE SCHOOL DISTRICT # 405, a municipal corporation and a subdivision of the State of Washington, Federal Way School District # 210, a municipal corporation and a subdivision of the State of Washington, and Seattle School District # 1, a municipal corporation and subdivision of the State of Washington, and Seattle Times Company, Respondents.
Nos. 54300-8-I, 52304-0, 54380-6.
Court of Appeals of Washington, Division 1.
October 3, 2005.
*619 Leslie Jean Olson, Olson & Olson PLLC, Seattle, WA, for Appellants Bellevue School Dist. # 405 & Seattle John Doe # 6.
Tyler K. Firkins, Vansiclen Stocks & Firkins, Auburn, WA, for Appellants John & Jane Does.
Joyce L. Thomas, Frank, Freed, Subit & Thomas LLP, Seattle, WA, for Appellant Seattle John Doe # 13.
Steve Paul Moen, Shafer, Moen & Bryan PS, Seattle, WA, for Appellant Seattle John Doe # 9.
Michael W. Hoge, Perkins Coie, Seattle, WA, for Respondent Bellevue School Dist. # 405.
Jeffrey Ganson, Dionne & Rorick, Seattle, WA, for Respondent Federal Way School Dist. # 210.
John Michael Cerqui, Seattle Public Schools/General Counsel Office, for Respondent Seattle School Dist. # 1.
Michael John Killeen, Michele Lynn Earl-Hubbard, David Wright Tremaine LLP, Seattle, WA, Alison Page Howard, Redmond, WA, for Respondent/Cross App. Seattle Times Company.
Jessica Goldman, Summit Law Group, Seattle, WA, for Amicus Curiaes Allied Daily Newspaper, Belo Corp., McClatchy Co., Washington Newspapers Publishers.
*620 Harriett Kay Strasberg, Attorney at Law, Olympia, WA, for Amicus Curiae Washington Education Assn.
BECKER, J.
¶ 1 School districts must disclose the names of teachers who have been accused of misconduct of a sexual nature, even when the districts have concluded after investigation that the allegations are unsubstantiated or too minor to justify discipline. The public is legitimately concerned with knowing the names of the teachers in order to protect students and monitor the performance of the districts. The privacy exemption in the Public Records Act permits withholding the teacher's identity only if the accusation of misconduct is patently false.
¶ 2 In November and December of 2002, the Seattle Times asked the Seattle, Bellevue, and Federal Way School Districts for records identifying teachers accused of, investigated, or disciplined for sexual misconduct within the previous 10 years. The Times wanted to know the substance of each allegation as well as the outcome of any investigation.
¶ 3 Upon receiving a request for records, an agency has the right under the Public Records Act (RCW 42.17.250-.348) to notify individuals affected by the request. The affected individuals may then seek to enjoin the release of records based on the statutory exemptions. RCW 42.17.320. The school districts notified 55 current and former teachers whose records they had gathered in response to the request by the Seattle Times. The present lawsuit was filed against the districts alleging that 37 of these teachers objected to the release of their records. The Times was granted the right to intervene. The districts released to the Times the unedited records of teachers who did not join the lawsuit and those who were dropped from the case in its early stages. The remaining plaintiffs maintained that the release of records identifying them with accusations of sexual misconduct would be an invasion of privacy.
¶ 4 The Public Records Act states as policy that "free and open examination of public records is in the public interest, even though such examination may cause inconvenience or embarrassment to public officials or others." RCW 42.17.340(3). "Agencies shall not distinguish among persons requesting records" and shall not require requesters to explain why they want to see the records. RCW 42.17.270. Thus, the request by the Seattle Times is to be treated no differently than if it came from a parent, from another teacher or school district, or anyone else.
¶ 5 The Act commands agencies of the State of Washington to disclose public records upon request unless a specific exemption allows withholding of the requested records. The party seeking to avoid disclosure has the burden of establishing that the information requested comes within a specific exemption. Spokane Police Guild v. Liquor Control Bd., 112 Wash.2d 30, 35, 769 P.2d 283 (1989). The exemption asserted by the teachers is for "Personal information in files maintained for employees, appointees, or elected officials of any public agency to the extent that disclosure would violate their right to privacy." RCW 42.17.310(b).

BROUILLET
¶ 6 The right to privacy is invaded or violated under the Act "only if disclosure of information about the person: (1) Would be highly offensive to a reasonable person, and (2) is not of legitimate concern to the public." RCW 42.17.255. The Times primarily argues that the requested information is a matter of legitimate public concern under Brouillet v. Cowles Publg., 114 Wash.2d 788, 791 P.2d 526 (1990). If so, the information must be disclosed even if disclosure is highly offensive to the teachers accused.
¶ 7 In Brouillet, a publisher asked the Superintendent of Public Instruction for records of teachers whose teaching certificates had been revoked in the last 10 years. The Superintendent provided the names, but withheld documents detailing the reasons for revocation. Some of these documents contained statements about the sexual involvement of teachers with students. The trial court ordered the Superintendent to disclose the documents. The only deletions ordered were those necessary to prevent identification *621 of the students. The Supreme Court affirmed, holding that release of the records was not an invasion of privacy:
Sexual abuse of students is a proper matter of public concern because the public must decide what can be done about it. The public requires information about the extent of known sexual misconduct in the schools, its nature, and the way the school system responds in order to address the problem. Because the information sought is of legitimate public interest, we conclude that no privacy right has been violated.
Brouillet, 114 Wash.2d at 798, 791 P.2d 526.
¶ 8 The teachers involved in this case recognize that under Brouillet, the public is entitled to know how school district administrators respond to reports of misconduct. Without objection, the districts released to the Times early in the litigation numerous records documenting the nature of the allegation in each case, the grade level, the type of investigation conducted, and any disciplinary action taken. But the names of the teachers were changed to "John Doe" pseudonyms, and other identifying information was redacted. The Times continued to pursue, and the John Does to resist, disclosure of their real names.
¶ 9 The trial court concluded that teacher identities were a matter of legitimate public concern "when the investigation of the allegations is inadequate, the allegations are deemed substantiated, or the employee is disciplined with what amounts to more than a letter of direction."[1] Using this test, the court ultimately determined that 15 of the original plaintiffs ("prevailing John Does") were entitled to the protection of the privacy exemption. On April 25, 2003, the court ordered the districts to release the names and identifying information concerning the other 22 teachers. Three of these teachers ("appellant John Does") appeal the order of disclosure. The Times cross-appeals, seeking release of identifying information for the 15 prevailing John Does. Because the trial court's rulings on matters essential to our decision were made on the basis of the documentary record rather than live testimony, our review is de novo. See Brouillet, 114 Wash.2d at 793, 791 P.2d 526; Spokane Police Guild, 112 Wash.2d at 35-36, 769 P.2d 283.
¶ 10 Two cases were key to the trial court's decision to withhold the names of the 15 prevailing John Does: Dawson v. Daly, 120 Wash.2d 782, 796, 845 P.2d 995 (1993) (overruled in part by Progressive Animal Welfare Soc. v. University of Washington, 125 Wash.2d 243, 884 P.2d 592 (1994)), and City of Tacoma v. Tacoma News, Inc., 65 Wash.App. 140, 827 P.2d 1094, rev. denied, 119 Wash.2d 1020, 838 P.2d 692 (1992).

DAWSON v. DALY
¶ 11 Relying on Dawson v. Daly, the trial court concluded that the identity of an accused teacher is not a matter of legitimate public concern "when an adequate investigation uncovers no significant misconduct and the employee is issued what amounts to a letter of direction with no restrictions or punishment."[2] A counseling letter, or "letter of direction", is a practice a district may use to respond when it views a teacher's conduct as inappropriate but not serious enough to warrant a reprimand or other discipline.
¶ 12 The names of eight prevailing John Does were withheld on this basis. Bellevue John Doe 1 was accused of inappropriately touching a female student  touching the student's knee, giving her a neck rub, and hugging her. The record consists of two letters to the teacher. The first letter places the teacher on administrative leave pending an investigation. The second letter says the school will not impose any discipline for the conduct, and authorizes the teacher to return to work. It says, "you did not deny the contact but expressed surprise that the student interpreted your intentions as being inappropriate and that the school would have concern for the matter." The district instructed the teacher in the future not to "rub students' necks, touch their knees or other areas that may reasonably be considered *622 sensitive, or touch them in ways that may reasonably be interpreted as inappropriate."
¶ 13 Bellevue John Doe 2 was accused by two female students of conduct that made them feel uncomfortable. The record consists of a single letter from the district advising the teacher that the investigation "points to actions that seem to contain behaviors that could be misconstrued by teenage girls as flirtatious". The letter says "no one is accusing you of any sexual misbehavior" and the students involved "said you did not touch them in a sexual manner." The letter mentions four areas of concern identified by the students: the way the teacher sometimes looked at them or commented on their looks; letters written to them by the teacher; the teacher's presence in places at school or where the girls worked that made them feel the teacher was waiting for them; and physical contact that made them uneasy, such as hugging. The letter asks the teacher to review what he had been told during the investigation and to "re-evaluate your behavior toward students in the future."
¶ 14 Bellevue John Doe 3, a gym teacher, was the subject of a complaint by a 9th grade girl in November 2002 who said he was staring inappropriately at other girls and making remarks about their shirts. Older girls in the same school told her they had noticed the same kind of behavior the year before. A brief note in the file says there was an investigation in 2001 into complaints of "sexual harassment" that revealed no wrongdoing by the teacher, and resulted in no disciplinary action. The district likewise concluded there was no basis for disciplinary action in the 2002 complaint. According to an internal memo, the teacher will be "very careful what he says and does in the future, as he understands his actions can be misconstrued even when his intentions are professional."
¶ 15 Bellevue John Doe 4 was accused of flirting with students. He admitted that he winked at boys and girls alike, that he sometimes touched students on their shoulders, and that he jokingly told a girl he would like to meet her sister. The District directed him to establish better boundaries with his students.
¶ 16 Bellevue John Doe 6 admitted making sarcastic comments to students, including "you are basically screwed." The district advised him by letter to be sure his language was appropriate for a classroom setting and to keep comments positive. The record also includes an e-mail to a student's mother following up on her concerns about the teacher touching her daughter on the shoulder and her daughter's feeling of being "uncomfortable" in the class. The e-mail memorializes the mother's agreement that her concerns did not raise sexual harassment issues.
¶ 17 Bellevue John Doe 7, a middle school teacher, allegedly made kissing noises as he walked up the stairs behind a female student, and stuck out his tongue in the face of another student in a manner she found offensive. The teacher denied both allegations. The district sent the teacher a letter noting that he had been warned in the past against similar behavior, which in some cases he had admitted. While one accuser had later written a letter of apology in which she admitted fabrication, that incident was offset by "many other instances of alleged improper behavior or comments toward female students. . . . I believe it is important for you to consider what it is about your interactions with adolescents, particularly females, that continues to raise questions about your judgment and propriety." The district warned him that any further complaints of this nature "which are substantiated" would lead to disciplinary action.
¶ 18 Bellevue John Doe 9 reportedly made comments to girls in physical education classes such as "I can't wait to see you all in your tights bouncing around". While he did not recall the specifics, he agreed he probably said something along those lines. He did not recall that he ever walked through the girls' locker room when the girls were changing clothes, as another complaint alleged, but said he sometimes passed through the dressing area when he expected it to be empty, or after announcing "man coming through". A letter of direction from the district advised him that these behaviors were embarrassing to students and should not be occurring.
¶ 19 Federal Way John Doe 3 reportedly made a flippant remark about underwear, *623 told his science class they were all products of successful sex, and touched a student on her buttocks. The teacher said the touch was inadvertent but acknowledged the remarks. The district counseled him that the remarks were inappropriate and warned him that further complaints would lead to discipline.
¶ 20 The trial court classified each of these cases as involving a letter of direction and found the name of teacher to be exempt from disclosure under the exemption in RCW 42.17.310(1)(b): "Personal information in files maintained for employees, appointees, or elected officials of any public agency to the extent that disclosure would violate their right to privacy." The Supreme Court refers to this section as the "employee privacy exemption." Dawson, 120 Wash.2d at 794, 845 P.2d 995. In Dawson, one of the items requested was a copy of the personnel file of a deputy prosecutor in Snohomish County. The prosecutor objected to disclosure of performance evaluations in the file. The Supreme Court found the offensiveness prong of the privacy exemption to be met. Disclosure is "highly offensive to a reasonable person" if it is the type of information the employee would normally not share with strangers. Dawson, 120 Wash.2d at 796, 845 P.2d 995. Employee evaluations often contain sensitive personal information, such as references to family and health problems as well as test scores and other indicators of competence that most individuals would not willingly disclose publicly. Dawson, 120 Wash.2d at 797, 845 P.2d 995.
¶ 21 The Court also decided that the prosecutor's performance evaluations were not "of legitimate concern to the public." Dawson, 120 Wash.2d at 797, 845 P.2d 995. According to Dawson, the Act  through its statement of policy  permits some balancing of the public interest in disclosure against the public interest in the "efficient administration of government". Dawson, 120 Wash.2d at 798, 845 P.2d 995; see RCW 42.17.010(11) ("That, mindful of the right of individuals to privacy and of the desirability of the efficient administration of government, full access to information concerning the conduct of government on every level must be assured as a fundamental and necessary precondition to the sound governance of a free society"). Public disclosure of performance evaluations could potentially harm efficiency in the government workplace by lowering morale, inciting jealousy, and chilling candor in the evaluation process. "These harms outweigh the public interest in disclosure, at least in a case such as this one where our in camera review, conducted at the request of the prosecutor, revealed that Stern's evaluations do not discuss specific instances of misconduct or public job performance." Dawson, 120 Wash.2d at 800, 845 P.2d 995.
¶ 22 In this case, the trial court erred in its determination that the names of teachers who receive letters of direction are categorically exempt from disclosure under Dawson. The files we have examined are not routine performance evaluations. They do not contain test scores, rankings, or supervisory notes bearing on the possibility of probation or promotion, and the letters of direction do not refer to sensitive personal information, such as illnesses and family problems. The files we have examined contain the very materials that the files in Dawson did not  discussion of specific instances of misconduct and public job performance. They were generated by complaints, and virtually all of them relate solely to the public, on-duty interactions of students with teachers. In this respect they are like police internal investigation files generated by citizen complaints. Such files are not exempt as an invasion of privacy because the public is legitimately concerned with the proper performance of public duties. Cowles Publishing Co. v. State Patrol, 109 Wash.2d 712, 726-28, 748 P.2d 597 (1988) (names of officers are not covered by privacy exemption, although they may be withheld under the exemption for specific investigative records compiled by law enforcement, RCW 42.17.310(1)(d)).
¶ 23 In Cowles, the request sought only those records where the complaint was "sustained", or determined to be true, after the internal affairs investigation. Thus, the court did not have to confront the argument pressed by the teachers in this case: that disclosing the name of the teacher is an *624 invasion of privacy where the complaint has not been sustained and no discipline has been imposed. Indeed, as the teachers point out, the Cowles court commented in dicta that the release of files with complaints which were later dismissed or did not lead to sanctions against the officer would be more intrusive into privacy than release of files involving sustained complaints. Cowles, 109 Wash.2d at 725, 748 P.2d 597.
¶ 24 The teachers also cite Brown v. Seattle Public Schools, 71 Wash.App. 613, 860 P.2d 1059 (1993). In that case, the request was for disclosure of portions of the personnel file of a controversial elementary school principal. The file contained, in addition to yearly performance evaluations and self-evaluations, documents not clearly exempt under Dawson that discussed specific incidents at the school. The documents reflected discussions about the principal's handling of a racially motivated dispute between two teachers; her attitude toward an intern; her use of school district properties; travel to an administrator's conference at a time when her school was in an uproar; and her handling of an assault on a teacher by a parent. Brown, 71 Wash.App. at 615, 860 P.2d 1059. The trial court ordered disclosure. This court reversed, applying Dawson. While recognizing that some of the documents in Brown's personnel file did "address concerns" about her handling of specific incidents, this court's review found "no discussion of specific instances of misconduct on Brown's part, only shortcomings and performance criticisms, as well as praises." Brown, 71 Wash.App. at 619, 860 P.2d 1059 (emphasis in original). Applying the reasoning in Dawson, the court concluded that if disclosure of such evaluations were allowed, "the quality of public employee performance will suffer because employees will not receive the guidance and constructive criticism required for them to improve their performance and increase their efficiency." Brown, 71 Wash.App. at 619-20, 860 P.2d 1059.
¶ 25 Here, the teachers maintain that release of the names of accused teachers in instances where the districts have found no significant misconduct will likewise damage the efficient operation of the school system to a degree that outweighs the public interest in disclosure. They say the letter of direction is a valuable supervisory tool in such cases precisely because it does not impose discipline. Respondent Federal Way School District agrees with the teachers that imposition of disciplineeven if only a reprimandis more likely to provoke a grievance. Through a confidential letter of direction the district can simply and efficiently correct minor misconduct, without the cost and stress associated with litigating a grievance. Federal Way District says that if a teacher who receives a letter of direction can be identified publicly, the tool will lose its value for evaluation and supervision, because "employees will view the potential public disclosure of such letters as threatening their professional reputations, and therefore worthy of vigorous challenge."[3]
¶ 26 These are substantial concerns. Nevertheless, we are not persuaded that the negative impact of increased grievance litigation outweighs the public interest in disclosure articulated in Brouillet. And we do not read Dawson and Brown as creating what would likely be a wavering line between letters that address "concerns" as opposed to letters that address proven misconduct. Instead, we read Dawson and Brown as defining a narrow exemption for routine performance evaluations. The letters of direction do not fit into that category because they were prompted by complaints about specific instances of alleged misconduct. Put another way, a district's decision not to discipline a teacher after investigating a complaint does not convert the investigation file into a performance evaluation.
¶ 27 The statutory exemptions to the Public Records Act's "strongly worded mandate for broad disclosure" must be narrowly construed. Progressive Animal Welfare Soc. v. University of Washington, 125 Wash.2d 243, 251, 884 P.2d 592 (1994). To hold that the public interest in a complaint of sexual misconduct is legitimate only if the school district has decided that discipline is warranted would violate this principle by creating *625 an exemption that is broad, malleable and open-ended. We conclude that letters of direction are not performance evaluations protected from disclosure under RCW 42.17.310(1)(b) as interpreted in Dawson and Brown.
¶ 28 The trial court understood the Dawson exception for employee performance evaluations as being rooted not only in the definition of "invasion of privacy" in RCW 42.17.255, but also in RCW 42.17.330. Section .330 authorizes a court to enjoin against the examination of any public record if such examination "would clearly not be in the public interest and would substantially and irreparably damage any person, or would substantially and irreparably damage vital governmental functions." RCW 42.17.330. The trial court found that disclosure of letters of direction would substantially and irreparably damage vital government functions because it would chill employer-employee communications. To support this finding, the prevailing John Does rely on Dawson's apparent holding that section.330 creates an independent basis upon which a court may find that disclosure is not required. Dawson, 120 Wash.2d at 793-94, 845 P.2d 995.
¶ 29 The Supreme Court later expressly disavowed that holding in Dawson as dicta, and said, "The Legislature did not intend to entrust to either agencies or judges the extremely broad and protean exemptions that would be created by treating section .330 as a source of substantive exemptions." Progressive Animal Welfare Soc., 125 Wash.2d at 260, 261 n. 7, 884 P.2d 592. Thus, section .330 does not furnish an independent basis for withholding the names of teachers who receive letters of direction.

TACOMA v. TACOMA NEWS
¶ 30 Relying on Tacoma News, the trial court withheld the names of seven prevailing John Does on the basis that the allegations of sexual misconduct were found, after an adequate investigation, to be "unsubstantiated" and therefore not a matter of legitimate public interest:
Due to the highly charged nature of an accusation of sexual misconduct, whether the allegation is substantiated or unsubstantiated becomes the dominant factor in determining whether release of the information would violate an employee's right to privacy. The substantiated/unsubstantiated nature of the allegation bears upon both elements of the statutory definition of the right to privacy in RCW 42.17.255. If the allegation is unsubstantiated it significantly increases the offensive nature of its revelation and if it is unsubstantiated, it is of no legitimate public interest.[[4]]
¶ 31 The "unsubstantiated" cases begin with the file of Federal Way John Doe 1, a middle school teacher. The teacher went out in the hallway to talk with a girl who had come in upset after recess. When they returned to the classroom, some of the students were laughing uproariously. The teacher inquired and was told that one of the boys had looked out the door window and announced to the class that the girl was sitting in the teacher's lap. His announcement inspired ribald remarks and lyrics. The teacher reported this to the principal, and there was an immediate investigation. Another teacher who had been in the hallway said the girl was not sitting on the teacher's lap. The girl herself confirmed this. The boy who started the commotion admitted that he had not really seen her sitting on the teacher's lap. The boy was temporarily suspended for disrupting the classroom.
¶ 32 Federal Way John Doe 2 is a special education teacher. His lengthy file includes a journal in which an assistant teacher chronicled her impressions of what she regarded as the teacher's inappropriately prolonged stroking and cuddling of his students. The teacher denied the alleged misconduct. An attorney hired by the district to investigate found that other teachers did not notice anything amiss. The investigator reported that after being cautioned by the principal, the teacher ceased allowing students to sit on his lap, a practice from which misconceptions could arise. The district concluded that none of the allegations had been substantiated.
*626 ¶ 33 Seattle John Doe 1 was accused of rape in a statement given to Seattle police in 1994 by a student who recounted events she said had occurred more than a year earlier. The alleged rapists were the teacher and another student. The accusation came after the student consulted a counselor who assisted with the recalling of suppressed memories. The student said she had been kidnapped many times and taken to caves where Satanic rituals were performed and human sacrifices were carried out, three or four deaths at a time. Her flashbacks included seeing the teacher cut open her stomach and suture it back together. The police department investigated and found none of the physical evidence that would necessarily be present if these accusations were true. The police closed their investigation and the school district's investigation likewise found the allegations to be unfounded.
¶ 34 Seattle John Doe 3 denied a student's allegation that he once asked her, "Have you ever had sex with a man?" The district did not find "sufficient certainty" of the charge to impose discipline but cautioned the teacher to always conduct himself in a professional manner.
¶ 35 Seattle John Doe 5, a high school teacher, was the subject of an investigation after two girls reported that he had improperly touched another girl. One of the parents, who had been contacted by the teacher, called the principal and said the girls made up the story. The investigator twice interviewed the girls involved. The accusers denied making the original allegation. They said they heard the teacher had been sued for sexual harassment in the past, and older girls had told them that the teacher had put his hands in a girl's pants. The alleged victim said the teacher had never touched her or said anything with sexual overtones; the only thing she had ever told the other two girls was that the teacher offered to buy her dinner for two at a Mexican restaurant if she completed an extra credit assignment in Spanish. The District informed the teacher that there was "insufficient evidence to merit further action on this matter at this time," but also criticized him for conducting his own investigation, which "compromised our ability to obtain untainted information."
¶ 36 Seattle John Doe 7 was formerly married to a woman whose daughter, in 1993, allegedly recovered a memory that she was molested and raped by him some 15 years earlier when he was her stepfather. She would have been about 14 at the time of the alleged rape. She contacted the police, and the police contacted the school district. Extensive investigation by the district found no evidence to substantiate any of her allegations. The district took no further action.
¶ 37 Seattle John Doe 10 was accused by a seventh-grade girl who said that three years earlier he had pursued her, flattered her, engaged in sexually oriented telephone conversation, and kissed her and held her on his lap. The teacher denied all this. He acknowledged giving notes, gifts, and pictures to students. The district concluded the notes were bad judgment but did not discipline the teacher. "Teacher has no prior history of anything similar, student is known to fabricate and seek attention."
¶ 38 The trial court decided that the names of the accused teachers in each of these cases did not have to be disclosed because the accusations remained unsubstantiated after an investigation the trial court deemed adequate. Precedent for this rationale is found in City of Tacoma v. Tacoma News, Inc., 65 Wash.App. 140, 827 P.2d 1094, rev. denied, 119 Wash.2d 1020, 838 P.2d 692 (1992).
¶ 39 The record request in Tacoma News arose from a police investigation into an anonymous tip that a local political figure had abused a child. The newspaper heard of the investigation and asked to see the police incident report. The City resisted. The trial court denied disclosure. The trial court found that the allegations had been investigated by four separate and independent agencies, and each agency concluded the allegations were unsubstantiated.
¶ 40 On appeal, the newspaper argued that the allegations were of legitimate public concern whether true or false. The Court of Appeals, Division Two, disagreed. An allegation of misconduct with a child "is surely of less concern to the public if it is false than if *627 it is true." Tacoma News, 65 Wash.App. at 148, 827 P.2d 1094. Therefore, public agencies and courts "may consider whether information in public records is true or false, as one factor bearing on whether the records are of legitimate public concern". Tacoma News, 65 Wash.App. at 149, 827 P.2d 1094. And if information "remains unsubstantiated after reasonable efforts to investigate it, that fact is indicative though not always dispositive of falsity." Tacoma News, 65 Wash.App. at 149, 827 P.2d 1094. The court judged that based on the unsubstantiated nature of the child abuse allegations after four separate agencies had investigated it, the trial court properly concluded that the requested documents and names were not of legitimate public concern. Tacoma News, 65 Wash.App. at 151-52, 827 P.2d 1094.
¶ 41 We agree with the Tacoma News holding that the public as a rule has no legitimate interest in finding out the names of people who have been falsely accused. In the case of Seattle John Doe 1, for example, the accusation that the teacher was guilty of violent rape, kidnapping, and satanic torture was completely implausible. If true, such an accusation would necessarily have been corroborated by physical evidence, but there was none.
¶ 42 The Seattle Times concedes that no one reading the file would reasonably believe that the allegations against Seattle Doe 1 were anything but fabrications. The Times nevertheless advocates disclosing all names, even when that means unveiling teachers who have been falsely accused. The Times says that typically it is not a secret when a teacher has been accused of sexual misconduct, and the interests of the teacher as well as the public are best served by "clearing the air" and disclosing the full file, including the teacher's name. But when information about an individual is protected by the right to privacy, the individualnot anyone elsegets to decide whether clearing the air is a good idea. Neither the existence of a school district file documenting the investigation, nor the circulation of rumors about who was involved, justifies forcing Seattle John Doe 1 to be publicly linked, without his consent, with these highly offensive allegations that are patently false. Public disclosure of his name would serve no interest other than gossip and sensation.
¶ 43 The Times emphasizes the practical desirability of a bright line rule requiring full disclosure, including names. According to the Times, a framework that allows the school districts to avoid disclosure by labeling an allegation as false will "devitalize" the Act. See Hearst Corp. v. Hoppe, 90 Wash.2d 123, 131, 580 P.2d 246 ("leaving interpretation of the act to those at whom it was aimed would be the most direct course to its devitalization."). But while a bright-line rule requiring full disclosure of records without any deletions would undoubtedly be easier to administer and less frustrating for requesters, that is not the framework established by the Public Records Act. The Act specifically provides that agencies may delete names and other identifying information from records they are releasing if such deletions are "required to prevent an unreasonable invasion of personal privacy". RCW 42.17.260(1). This provision anticipates that agencies will exercise judgment that may result in the withholding of names. This will not devitalize the Act because the public will still be allowed to inspect the investigative files after deletion of information identifying the teachers. Requesters who wish to challenge in court a school district's decision to withhold a name may use the files, just as the Times has done here, to dispute the deletions.
¶ 44 In short, the trial court did not err in withholding the name of Seattle John Doe 1 on the basis that the allegation against him was false. The case of Seattle John Doe 7, accused of rape a decade after the fact by a former stepdaughter, is similar. The lack of physical evidence of the rape itself is not, of course, enough to judge the allegation false. But this accusation of rape, made by an individual with a well documented history of psychiatric problems, was purportedly based on a memory suppressed for 15 years. The investigation found no evidence to support details of the accuser's story for which corroborative evidence should have been available if the story were true  including a memory that the teacher took her to have an abortion. The accuser told the investigator that she *628 had been dealing with demons in her head since early childhood, long before she knew the teacher, but she also said that the rape may have caused the demons to chase her and sexually assault her. The accuser's current psychiatrist viewed the recovered memory as unreliable. The accuser and her mother both admitted to the investigator that the police report had been filed with the thought of getting money from the teacher.
¶ 45 Not only is the allegation against Seattle John Doe 7 patently false, disclosing his name would be wrong for the further reason that it would expose the identity of the accuser, due to the former family relationship. Without objection by the Times, this litigation has proceeded on the assumption that the identities of the student accusers should not be disclosed. This was the posture of the parties in Brouillet, where the court approved deletions of information which might lead to identification of the students. Brouillet, 114 Wash.2d at 793, 798-99, 791 P.2d 526. Whether disclosure of an accuser's identity might in some cases be justified by the necessity of disclosing the teacher's identity is an issue neither presented nor briefed, and we do not comment on it.
¶ 46 We also affirm the order of nondisclosure as to Federal Way John Doe 1. The story that he was sitting out in the hallway with a middle school girl on his lap turned out to be a blatant fabrication by an unruly student whose credibility was completely undermined by an immediate investigation. The concerns identified in Brouillet would not be served by identifying this teacher with an accusation of sexual misconduct.
¶ 47 None of the other files support withholding the names of the accused teachers on the basis that the accusation was patently false. The problem with the trial court's use of the Tacoma News analysis as a touchstone for withholding the names of the other John Does is that the court did not distinguish between "unsubstantiated" and "false". The two terms do not mean the same thing. As these case files show, it is much easier to label an accusation "unsubstantiated" than to say with confidence that it is false. This is because "unsubstantiated" often means only that an investigator, faced with conflicting accounts, is unable to reach a firm conclusion about what really happened and who is telling the truth. Especially when the conduct reported is a fleeting touch, a comment seemingly off-color or directed at a student's physical appearance, or a habit of writing personal notes, it is possible that the accuser misunderstood the words, misinterpreted the intent, or even fabricated the entire event. But it is also possible that the accuser was accurately reporting inappropriate conduct. Where that possibility exists, the public has a legitimate interest in knowing the name of the accused teacher. If a teacher's record includes a number of complaints found to be "unsubstantiated", the pattern is more troubling than each individual complaint. Yet, if the teacher's name in each individual complaint is withheld from public disclosure, the public will not be able to see any troubling pattern that might emerge concerning that teacher.
¶ 48 There is precedent for disclosure of complaints that have not been proved true in a fact-finding process. The privacy exemption in the Public Records Act does not prevent disclosure of the police record of an arrest for drunk driving that included a strip search, even though the arrest does not lead to a conviction and even though the disclosure is embarrassing to the arrestee. Hudgens v. City of Renton, 49 Wash.App. 842, 746 P.2d 320 (1987), rev. denied, 110 Wash.2d 1014 (1988). Statements by police officers detailing their complaints about the performance of the chief of police "might embarrass the chief but would not violate his right of privacy" within the meaning of RCW 42.17.310(1)(b). Columbian Publishing Company v. City of Vancouver, 36 Wash.App. 25, 30, 671 P.2d 280 (1983). The records of teacher certificate revocations are subject to disclosure even though there has been no formal process establishing that the allegations of misconduct are true. See Brouillet, 114 Wash.2d at 792, 791 P.2d 526 (86 of the 89 teachers gave up their certificates voluntarily rather than invoking their right to either a closed or open hearing). Some government professionals do have limited statutory protection from disclosure of complaints. See, e.g., RCW 2.64.113 (complaints *629 received by Judicial Conduct Commission are exempt from disclosure unless and until they lead to formal charges and a public hearing); RCW 18.71.0195 (exemption for certain reports concerning physicians). There is no statute specifically exempting public school teachers.
¶ 49 Accordingly we conclude that the name of a teacher who has been the target of an unsubstantiated allegation of sexual misconductone that is not patently falseis subject to public disclosure, notwithstanding Tacoma News. When an allegation against a teacher is plainly false, as shown by an adequate investigation, that teacher's name is not a matter of legitimate public concern. Investigative files with identifying information redacted will always be subject to disclosure.
¶ 50 We affirm the order of nondisclosure as to Federal Way John Doe 1, Seattle John Doe 1, and Seattle John Doe 7. As to all the other prevailing John Does, the order of nondisclosure is reversed.

APPELLANT JOHN DOES
¶ 51 The trial court ordered disclosure of the identities of 22 of the plaintiff teachers whose misconduct was deemed substantiated or had resulted in discipline, even if only a reprimand. The allegations in these cases include a wide spectrum of misconduct. For example, Federal Way Jane Doe 1 showed students her pierced navel, called young men "Babe", and generally had difficulty maintaining professional boundaries; Federal Way John Doe 5 continued to be the subject of complaints about unwelcome physical contacts with students after being warned; Seattle John Doe 4 resigned after being confronted with an allegation that he had become sexually involved with a student. We do not discuss their cases in detail because they did not appeal from the order of disclosure. The three teachers in the group of 22 who have appealed from the order of disclosure are Bellevue John Doe 11, Seattle John Doe 6, and Seattle John Doe 9.
¶ 52 Bellevue John Doe 11 is an art teacher, now retired. In 1993, students accused him of snapping bra straps and touching a students buttocks. In 1995, three students raised allegations of inappropriate touching in class. The teacher admitted that he may have touched some of the students, but claimed that it was either accidental or due to the cramped work space. There was an investigation by the Bellevue Police Department, but no charges. The trial court saw "a pattern of inappropriate behavior which was arguably sexually motivated," and ordered disclosure because there was "a founded basis for the complaint and the allegations are more than trivial."[5]
¶ 53 Seattle John Doe 6 was the subject of a 1993 accusation by a student at a juvenile detention center who said he poked her in the breast area three times. The trial court ordered the teacher's name disclosed:
While the District's investigation could not substantiate the allegation that he had poked a female student in her breast three times, he admitted that he did poke students to get their attention and got in a student's face for the same reason. The District found that this was inappropriate behavior, particularly when dealing with the student population being held in detention. John Doe # 6 was removed from the list of substitutes to be used at the detention facility and therefore this incident involved more than a mere letter of direction.[[6]]
¶ 54 Seattle John Doe 9 gave rides to students on three separate occasions in the early 1990's, violating a restriction against being alone with students that had been imposed based on his prior misconduct. He questions whether his files are too old to be responsive to the Times request, but the investigation occurred within the identified time period of 1992 to 2002. Although the investigation found no evidence of misconduct during the rides, the district imposed further restrictions and conditions on further employment because of the violation of the original restriction. The teacher retired and surrendered his teaching certificate in the *630 summer of 1995, thereby forestalling any further investigation or discipline. The trial court ordered his identifying information released on the basis that the allegations were well founded and he was disciplined.[7]
¶ 55 These three appellant John Does primarily contend that they should have been exempted either because the allegations were found to be unsubstantiated or because they did not lead to serious discipline. In light of our conclusion that the statute does not support exemption on those grounds, we reject this argument.
¶ 56 Seattle John Doe 9 argues that identifying information is not subject to disclosure because the purpose of the Public Records Act is to scrutinize the conduct of government, not individuals. We reject this argument as well. Government is carried out by individuals. The acts of a public employee bearing on his or her fitness to perform a public duty are, in and of themselves, matters of legitimate public concern. Cowles, 109 Wash.2d at 726-27, 748 P.2d 597. Unless the employee's name is covered by a specific statutory exemption, it is subject to disclosure.
¶ 57 Bellevue John Doe 11 acknowledges that the public has a right to scrutinize government actors. But, citing his constitutional right to due process, he argues that it is unfair to publicly link a teacher with "unsubstantiated" allegations of sexual misconduct. He contends his records cannot be released until there has been a "name-clearing hearing" or other procedure to assure that the accusers are reliable and that the misconduct actually occurred. He predicts that some students will knowingly make false allegations to taint the reputations of teachers they dislike.
¶ 58 We do not scoff at his prediction. But Bellevue John Doe 11 has not shown that disclosure of public records triggers constitutional due process protections so as to require procedural guarantees of the reliability of an accusation. The Due Process Clause of the Fourteenth Amendment to the United States Constitution precludes states from depriving any person of "life, liberty, or property, without due process of law." Nguyen v. State Dep't of Health, Medical Quality Assurance Commission, 144 Wash.2d 516, 522, 29 P.3d 689 (2001). Nguyen, the case on which Bellevue John Doe 11 principally relies, uses a due process analysis to define the standard of proof applicable in a license revocation proceeding for physicians. Naming the teachers who have been the subject of student complaints is not tantamount to revoking their professional licenses.
¶ 59 John Doe 11 also cites a line of cases holding that due process requires a name-clearing hearing before a government agency can publicly disseminate stigmatizing information contained in the personnel file of an employee who has been terminated. See Cox v. Roskelley, 359 F.3d 1105 (9 th Cir.2004) and other progeny of Board of Regents v. Roth, 408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972). But he has not shown that the due process analysis provided by these cases extends to an employee who has not suffered the harm of being terminated. Harm to reputation, standing alone, does not implicate the procedural guarantees of the Due Process Clause. Paul v. Davis, 424 U.S. 693, 709, 96 S.Ct. 1155, 47 L.Ed.2d 405 (1976) (government circulation of flyer publicizing plaintiff's shoplifting arrest was not a deprivation of a liberty or property interest or right to privacy protected by the constitution).
¶ 60 Bellevue John Doe 11 also emphasizes that he has been retired now for seven years. He contends the lapse of time has erased any public interest in the allegations, and argues that disclosing his identity would violate his right under the Washington Constitution not to "be disturbed in his private affairs." Wash. Const. Article 1 Section 7.
¶ 61 A person's interest in nondisclosure of intimate personal information is a constitutionally protected privacy interest under our State constitution, but it is not recognized as a "fundamental right requiring utmost protection", and accordingly is analyzed under a rational basis standard. *631 O'Hartigan v. Dept. of Personnel, 118 Wash.2d 111, 117-118, 821 P.2d 44 (1991) (State could require applicant for word processor position with the State Patrol to submit to a polygraph testing the veracity of her answers to questions about such matters as financial problems, undetected crimes, and use of controlled substances). Under the rational basis test, the government may require disclosure of personal information if the request is tailored to meet a valid governmental interest, and provided the disclosure is no greater than is reasonably necessary. O'Hartigan, 118 Wash.2d at 117, 821 P.2d 44. The analysis described in O'Hartigan does not yield a different result than the privacy definition in the Public Records Act. First, the request here is for disclosure of information about conduct occurring in the course of performing a public duty, not information of an intimate personal nature, and to that extent the claimed interest in confidentiality is not constitutionally protected. Second, the public has a valid interest in monitoring complaints of sexual misconduct in public schools, even those that have not been proved true. One reason for monitoring such complaints is to see whether they recur, perhaps in another setting involving children. Retirement from teaching public school reduces but does not eliminate that concern.
¶ 62 Seattle John Doe 6 joins the other teachers in arguing, under Dawson, that the public interest in disclosure of unsubstantiated allegations is outweighed by the public interest in the efficient administration of government. See Dawson, 120 Wash.2d at 798, 845 P.2d 995. He cites a declaration by a union representative, who says that a ruling in favor of disclosure will cause teachers to seek exoneration and protection from false allegations through fully litigated and time-consuming grievance hearings. As discussed above, however, we have concluded that the public interest in accountability outweighs the concerns associated with increased litigation of grievances. The activities described in the records we have examined involve the performance of the State's paramount public duty, education in the public schools.
¶ 63 In summary, the three appellant John Does have not carried their burden of establishing a basis for barring disclosure of their names.

PROTECTIVE ORDER
¶ 64 The trial court allowed the Seattle Times to interview school district employees involved in the investigations, so that the Times would have an adequate factual basis on which to make its argument for disclosure.[8] The court later described this process as "informal discovery." During the interviews, some names that the court intended to redact were inadvertently disclosed. The court ordered the Times not to make use of such names. The Times contends this was error. A trial court's determination to grant a protective order is reviewed for an abuse of discretion. Rhinehart v. Seattle Times Co., 98 Wash.2d 226, 257, 654 P.2d 673 (1982), aff'd, 467 U.S. 20, 104 S.Ct. 2199, 81 L.Ed.2d 17 (1984).
¶ 65 The Times argues that the inadvertently disclosed names were not properly subject to a CR 26 protective order, because the process through which they were disclosed did not comply with CR 26 and therefore was not "discovery". The documents produced were not in response to any request for production, the witnesses interviewed were not under oath, as would happen in a deposition, and there was no written requests signed by the requesting attorney. Nevertheless, it is clear from the record that the court directed the teachers and districts to make their information available to the Times on an expedited basis in order to serve the purpose of pretrial discovery, which is to "remove secrecy and surprise from the trial, thus presenting the fact-finder with a less dramatic, but more accurate, presentation of information." Rhinehart, 98 Wash.2d at 232, 654 P.2d 673 (quoting Chief Justice Warren, in forward to W. Glaser, Pretrial Discovery and the Adversary System (1968)).
¶ 66 It is "well settled" that discovery rules "are to be given a broad and liberal construction." McGugart v. Brumback, 77 Wash.2d 441, 444, 463 P.2d 140 *632 (1969). The Times has not cited any authority for the proposition that information may not be protected under CR 26 if it is gathered through a procedure that does not strictly comply with the civil discovery rules. The trial court "exercises a broad discretion to manage the discovery process in a fashion that will implement the goal of full disclosure of relevant information and at the same time afford the participants protection against harmful side effects." Rhinehart, 98 Wash.2d at 232, 654 P.2d 673. This authorization is broad enough to permit the court to restrain the use of discovery information for unauthorized purposes. Rhinehart, 98 Wash.2d at 232, 654 P.2d 673. We conclude the use of a CR 26 protective order was not error.
¶ 67 The Times also argues that the protective order was vague and overbroad, and failed to furnish adequate guidance. But on its face, the order is reasonably specific. The court limited its application to information disclosed in the informal discovery process. The order does not protect names learned by the Times by other means, or those disclosed by testimony in open court. See Oklahoma Publishing Co. v. District Court, 430 U.S. 308, 97 S.Ct. 1045, 51 L.Ed.2d 355 (1977). Application to the trial court to clarify the order was the appropriate course of action if the Times had any lingering doubt about which names could be published. See Rhinehart, 98 Wash.2d at 257 n. 9, 654 P.2d 673. Because the Times has not shown that it objected to the order as being vague or that it proposed narrowing language, we view the issue as waived.
¶ 68 The Times also argues that the protective order is precluded because it was not timely requested. But at least in the case of the Bellevue and Federal Way teachers, the original motion for a temporary restraining order included a request for a protective order for any inadvertently disclosed information. And in any event, the point of the informal discovery process was to aid the court in deciding which names would be disclosed. It would have been unreasonable to deny protection to names inadvertently disclosed on the basis that the protective order was not yet in place.
¶ 69 We conclude the trial court did not abuse its discretion in granting the protective order.

ATTORNEY FEES AND SANCTIONS
¶ 70 A party who "prevails against an agency" in a court action seeking records under the Public Disclosure Act is entitled to an award of costs including reasonable attorney fees as well as a penalty for each day that the party was denied the right to inspect or copy the record. RCW 42.17.340(4). Attorney fees are not available under this statute "where the agency has agreed to release the records but is prevented from doing so by court order." Confederated Tribes of the Chehalis Reservation v. Johnson, 135 Wash.2d 734, 757, 958 P.2d 260 (1998). In that case, the request was for records showing funds paid by Indian tribes under the terms of a tribal-state gaming compact. The tribes resisted disclosure; but the agencythe Gambling Commissiondid not. The requester of the records was denied an award of attorney fees because he "prevailed against the Tribes, not against the agency." Confederated Tribes, 135 Wash.2d at 756-57, 958 P.2d 260. Citing Confederated Tribes, the trial court concluded there would be no award of attorney fees "because the government agencies involved, the School Districts, did not oppose the Times' request; the opposition came from the individual teachers involved."[9] This determination was included as part of the comprehensive order entered on April 25, 2003.
¶ 71 On April 5, 2004, the Times moved for an award of attorney fees and costs against the districts on the basis that the school districts had actively opposed the release of records despite maintaining formal neutrality. Federal Way asked for sanctions against the Times for filing a frivolous motion. The court ruled that the April 2003 orders constituted a final judgment of the court and the only way to alter such a judgment would be by a CR 60 motion. The court did not grant the request for sanctions.
*633 ¶ 72 The Times then moved under CR 60(b)(3) to vacate the April 25, 2003 ruling on attorney fees. The basis was "newly discovered evidence", consisting of internal e-mails and other statements by district administrators tending to show that the district administrators sympathized with the teachers and had strategized with them about how disclosure could most effectively be resisted.[10] For example, an official with the Bellevue school district had sent an e-mail to a teacher, saying the district "worked hard trying to find a way to avoid releasing any information not absolutely required to be", and the district decided the best course of action was to work with the Washington Education Association "to arrange for them to bring a temporary restraining order to stop this."[11] The Times obtained these communications through a public disclosure request to the districts on April 16, 2003.
¶ 73 All three school districts opposed the Times' motion to vacate, and Federal Way District renewed its request for sanctions. The trial court denied the Times' motion upon finding that the "newly discovered evidence" was not material. While there was evidence that the districts "may have had some hostility" to the disclosure requests, there was no evidence that any such hostility actually delayed the Times in obtaining copies of public records to which it was entitled.[12] The legal proceedings were instigated by the teachers, not the districts, and during the proceedings the school districts were not adverse parties to the Times.[13] The court awarded Federal Way School District sanctions of $3,740 under CR 11 because the motion was "not warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law."[14]
¶ 74 The Times appeals both the denial of the CR 60 motion and the imposition of sanctions. Both rulings are reviewed for an abuse of discretion. Haley v. Highland, 142 Wash.2d 135, 156, 12 P.3d 119 (2000) (CR 60); State ex rel. Quick-Ruben v. Verharen, 136 Wash.2d 888, 903, 969 P.2d 64 (1998) (CR 11).
¶ 75 The Times contends that functionally, it falls within the statutory category of a "person who prevails against an agency in any action in the courts seeking the right to inspect or copy any public record". RCW 42.17.340(4). However, the Times has not persuasively distinguished Confederated Tribes (and did not even mention it in the motion below). The statute does not authorize an award of attorney fees against an agency "where the action was brought to prevent, rather than compel, disclosure." Confederated Tribes, 135 Wash.2d at 757, 958 P.2d 260. Interpreting the attorney fees provision to be inapplicable in legal actions when an individual rather than an agency opposes disclosure "is consistent with the purpose of the attorney fees provision, which is to encourage broad disclosure and to deter agencies from improperly denying access to public records." Confederated Tribes, 135 Wash.2d at 757, 958 P.2d 260.
¶ 76 The record confirms that the school districts did not oppose the Times' disclosure request in court. They complied with statutory disclosure deadlines. They provided reasonable estimates of the amount of time it would take to compile the requested information. They then notified the affected teachers that their names would be disclosed along with their records unless, by a certain date, they had successfully pursued injunctive relief.
¶ 77 The Times points out that the school districts withheld identification of the teachers during the time it took to notify them. But such delay is allowed by RCW 42.17.320. Affected individuals have the right to seek an injunction prohibiting the disclosure. RCW 42.17.330. "Implicit in the statutory right to seek an injunction to prevent disclosure is a realistic opportunity to apply to the trial court for such an order." Confederated Tribes, 135 Wash.2d at 758, 958 P.2d 260. Once the districts had assembled the records, their brief delay in turning over the unredacted *634 records was reasonably based on a recognition of this right.
¶ 78 After litigation began, Federal Way School District did file a brief advocating a bright-line rule exempting letters of direction from disclosure. Nevertheless, Federal Way and the other districts compiled the records and were prepared to release them if the trial court had not restrained them from doing so. Thus, in the court action, the Times prevailed against the teachers, not the districts.
¶ 79 The Times contends that Confederated Tribes did not overrule Doe I v. Washington, 80 Wash.App. 296, 908 P.2d 914 (1996), a case in which an award of attorney fees against the State Patrol was affirmed even though it was a third party who obtained the order enjoining the release of certain records. Doe I, 80 Wash.App. at 302, 908 P.2d 914. Assuming that Doe I has not been overruled, it is not on point and does not help the Times. The pivotal fact in that casethe State Patrol's delay and failure to comply with statutory time deadlinesis not present here.
¶ 80 We are not moved by the Times' suggestion that we can ignore Confederated Tribes because only one of the justices who was in the 6-3 majority is still on the Supreme Court. The principle of stare decisis"to stand by the thing decided"binds this court as well as the trial court to follow Supreme Court decisions, not to speculate that they will be overruled. Stare decisis also restrains new personnel on the Supreme Court from overruling the Court's precedents except in rare cases where time and events have proved the rule to be incorrect or harmful. State v. Ray, 130 Wash.2d 673, 679, 926 P.2d 904 (1996). "Without stare decisis, the law ceases to be a system; it becomes instead a formless mass of unrelated rules, policies, declarations and assertionsa kind of amorphous creed yielding to and wielded by them who administer it. Take away stare decisis, and what is left may have force, but it will not be law." State ex rel. State Fin. Comm. v. Martin, 62 Wash.2d 645, 665-66, 384 P.2d 833 (1963), quoted in Ray, 130 Wash.2d at 677, 926 P.2d 904.
¶ 81 The Times also asserts an equitable basis for reversing the trial court's decision on attorney fees. The equitable rule is that "attorney fees may be awarded to a party who prevails in dissolving a wrongfully issued injunction or, as here, temporary restraining order." Confederated Tribes, 135 Wash.2d at 758, 958 P.2d 260 (emphasis added). See also Alderwood Assocs. v. Washington Envtl. Council, 96 Wash.2d 230, 247, 635 P.2d 108 (1981). The temporary restraining order in this case either lapsed or was dissolved with respect to many of the original plaintiffs. As to some, counsel could not provide proof of representation; and the Times eventually prevailed on the merits as to the 22 John Does whose records were ultimately ordered disclosed. The Times contends these developments show that the order was wrongfully issued.
¶ 82 The purpose of the rule, which is to deter plaintiffs from seeking relief prior to a trial on the merits, "would not be served where injunctive relief prior to trial is necessary to preserve a party's rights pending resolution of the action." Confederated Tribes, 135 Wash.2d at 758, 958 P.2d 260. Here, the few named plaintiffs who did not wish to participate were soon dismissed without objection. The vast majority of the plaintiffs protected by the temporary restraining order were properly represented, and they had no other means to prevent the disclosure of their names and identifying information pending trial. A trial on the merits would have been fruitless if the names had already been disclosed. In these circumstances the equitable rule does not compel an award of fees.
¶ 83 Confederated Tribes controls. Because the contrary arguments presented by the Times to the trial court in connection with the motion to vacate were not based on a plausible view of the law, CR 11 sanctions were justified. See Madden v. Foley, 83 Wash.App. 385, 391, 922 P.2d 1364 (1996). We find no abuse of discretion in the courts decision not to award attorney fees, and no abuse of discretion in its decision to sanction the Times for its effort to change that decision a year later.

*635 MOTIONS
¶ 84 Bellevue John Doe 11 asks this court to take additional evidence in the form of three anonymous affidavits from other teachers. The affiants attest that they never witnessed any misconduct by their fellow teacher, and one of them questions the veracity of a particular student accuser. The value of such affidavits is questionable, especially since the allegations concern misconduct unlikely to be witnessed. The proffered evidence does not meet the requirements of RAP 9.11, and the motion is denied.
¶ 85 The prevailing John Does move to strike the cross-appellant's reply brief of the Seattle Times. They contend the brief cites records that were submitted after the trial without an adequate showing that any of them were considered by the trial court. See RAP 10.3 and RAP 10.7. To the extent the brief cites such records, we have not considered them. The motion is denied.
¶ 86 In summary, we affirm in part and reverse in part. On remand, the trial court is directed to order disclosure of the names of all teachers except for Federal Way John Doe 1, Seattle John Doe 1, and Seattle John Doe 7, and to unseal records accordingly after careful review to ensure redaction of student names. The orders on attorney fees and sanctions are affirmed.
WE CONCUR: AGID and COLEMAN, JJ.
NOTES
[1] Clerk's Papers at 113 (Conclusion of Law 12).
[2] Clerk's Papers at 113 (Conclusion of Law 15).
[3] Brief of Respondent Federal Way at 7.
[4] Clerk's Papers at 111 (Conclusion of Law 9).
[5] Clerk's Papers at 105 (Finding of Fact 29).
[6] Clerk's Papers at 107 (Finding of Fact 35).
[7] Clerk's Papers at 108 (Finding of Fact 38).
[8] Clerk's Papers at 99.
[9] Clerk's Papers at 114 (Conclusion of Law 17).
[10] Clerk's Papers at 2902.
[11] Clerk's Papers at 2545.
[12] Clerk's Papers at 3042.
[13] Clerk's Papers at 3045.
[14] Clerk's Papers at 3047.