189 P.3d 139 (2008)
BELLEVUE JOHN DOES 1-11, Federal Way John Does 1-5 and Jane Does 1-2, and Seattle John Does 1-13, and John Doe, Petitioners,
v.
BELLEVUE SCHOOL DISTRICT # 405, a municipal corporation and a subdivision of the state of Washington, Federal Way School District # 210, a municipal corporation and a subdivision of the state of Washington, and Seattle School District # 1, a municipal corporation and a subdivision of the state of Washington, Respondents, and
Seattle Times Company, Respondent/Intervenor.
No. 78603-8.
Supreme Court of Washington, En Banc.
Argued March 22, 2007.
Decided July 31, 2008.
*142 Tyler K. Firkins, Van Siclen Stocks & Firkins, Auburn, WA, Leslie Jean Olson, Olson & Olson PLLC, Steve Paul Moen, Shafer Moen & Bryan PS, Seattle, WA, for Petitioners.
Michael W. Hoge, Perkins Coie, Jeffrey Ganson, Dionne & Rorick, John Michael Cerqui, Seattle Public Schools, Lissa Wolfendale Shook, Federal Public Defender, Michele Lynn Earl-Hubbard, Allied Law Group, LLC, Seattle, WA, for Respondents.
Jessica L. Goldman, Summit Law Group, Seattle, WA, for Amicus Curiae on behalf of Allied Daily Newspapers of Washington, Inc., Belo Corporation, McClatchy Company, Pioneer Newspapers, Inc., Reporters Committee for Freedom of the Press, Seattle Post-Intelligencer, The Daily News, The Herald, The News Tribune, The Olympian, The Spokesman-Review, The Stranger, The Wenatchee World, Tri-City Herald, Washington Newspaper Publishers Association, Washington State Association of Broadcasters.
Douglas B. Klunder, Attorney at Law, Seattle, WA, for Amicus Curiae on behalf of American Civil Liberties Union of Washington.
Scott A.W. Johnson, Shelley Marie Hall, Stokes Lawrence PS, Seattle, WA, for Amicus Curiae on behalf of Center for Justice, Pacific Northwest Association of Journalism Educators, Seattle Community Council Federation.
Judith A. Endejan, Graham & Dunn PC, Seattle, WA, for Amicus Curiae on behalf of Washington Coalition for Open Government.
Harriet Kay Strasberg, Attorney at Law, Olympia, WA, for Amicus Curiae on behalf of Washington Education Association.
Edward Earl Younglove, III, Younglove Lyman & Coker PLLC, Olympia, WA, for Amicus Curiae on behalf of Washington Federation of State Employees.
FAIRHURST, J.
¶ 1 Fifteen public school teachers seek to enjoin their respective school districts from releasing their names in response to a public records request by the Seattle Times Company (Times) for the names of teachers alleged to have committed sexual misconduct against students. Division One of the Court of Appeals ordered that the teachers' identities be disclosed unless the allegations of misconduct were patently false. We reverse in part.
¶ 2 Sexual abuse of children by school teachers is a terrible atrocity. Allegations of such abuse should be thoroughly investigated by school districts and, if the allegations are substantiated, the media may request records containing the identity of the perpetrating teacher. However, when such allegations are determined to be unsubstantiated, the identity of the teacher is exempt from disclosure to a public records request because such disclosure would violate the teacher's right to privacy. Thus, we hold the identities of public school teachers who are subjects of unsubstantiated[1] allegations of sexual misconduct are exempt from disclosure under Washington's public disclosure act (PDA), former chapter 42.17 RCW, amended and recodified as chapter 42.56 RCW (LAWS OF 2005, ch. 274).[2]
¶ 3 We also hold that letters of direction[3] must be released to the public, but where a letter simply seeks to guide a teacher's future conduct, does not identify an incident of substantiated misconduct, and the teacher is not subject to any form of restriction or *143 discipline, the name of the teacher and other identifying information must be redacted.
¶ 4 In short, when there is an allegation of sexual misconduct against a public school teacher, the identity of the accused teacher may be disclosed to the public only if the misconduct is substantiated or the teacher's conduct results in some form of discipline.

I. FACTS
¶ 5 In 2002, the Times filed public disclosure requests with the Seattle, Bellevue, and Federal Way school districts seeking copies of all records relating to allegations of teacher sexual misconduct in the last 10 years. The school districts notified 55 current and former teachers that their records were gathered in response to the Times' requests. Thirty-seven of the teachers filed a lawsuit to enjoin the school districts from releasing their records, arguing that disclosure of records identifying them as subjects of sexual misconduct allegations violated their right to privacy.[4] The Times intervened.
¶ 6 The trial court ordered the school districts to disclose the identities of teachers whose alleged misconduct was substantiated, resulted in some form of discipline, or if the school district's investigation was inadequate.[5] After considering documentary evidence as to each plaintiff, the trial court concluded that the identities of 15 of the original plaintiffs were exempt from disclosure,[6] while the identities of the 22 remaining teachers were disclosable. The trial court also held the "`letters of direction'" were exempt from disclosure because disclosure would "interfer[e] with the employer's ability to give candid advice and direction to its employees." Clerk's Papers (CP) at 100, ¶ 10. Three of the teachers whose names were ordered to be disclosed appealed (Bellevue John Doe 11, Seattle John Doe 6, and Seattle John Doe 9). The Times cross appealed, seeking the identifying information of the 15 prevailing John Does.
¶ 7 The Court of Appeals affirmed in part and reversed in part, holding, "[w]hen an allegation against a teacher is plainly false,[[7]] as shown by an adequate investigation, that teacher's name is not a matter of legitimate public concern." Bellevue John Does 1-11 v. Bellevue Sch. Dist. No. 405, 129 Wash.App. 832, 857, 120 P.3d 616 (2005). However, the Court of Appeals determined that if an allegation is unsubstantiated or determined not to warrant discipline, the identity of the accused must be disclosed. Id. at 838, 120 P.3d 616. The Court of Appeals also held letters of direction must be disclosed. Id. at 848-49, 120 P.3d 616. Accordingly, the Court of Appeals affirmed nondisclosure as to Seattle John Doe 1, Seattle John Doe 7, and Federal Way John Doe 1 (finding these allegations to be patently false), id. at 854-55, 120 P.3d 616, but reversed the order of nondisclosure with respect to the other prevailing John Does. Id. at 855, 120 P.3d 616.
¶ 8 Twelve of the public school teachers (teacher petitioners) whose names were ordered disclosed by the Court of Appeals collectively sought review of that decision.[8] Seattle John Doe 9 individually sought review. Bellevue John Doe 11 and Seattle John Doe 6 separately filed a joint petition for review. We denied review of the individual issues raised by Seattle John Doe 9, Bellevue John Doe 11, and Seattle John Doe 6, and granted review only as to the three issues listed below. Bellevue John Does 1-11 v. Bellevue Sch. Dist. No. 405, 158 Wash.2d 1024, 149 P.3d 376 (2007).

*144 II. ISSUES
1. Under the PDA, are the identities of public school teachers who are the subjects of unsubstantiated allegations of sexual misconduct exempt from disclosure?[9]
2. Under the PDA, are letters of direction exempt from disclosure?
3. Is former RCW 42.17.255 (1987), recodified as RCW 42.56.050 (LAWS OF 2005, ch. 274, § 103), unconstitutional because it defines privacy more restrictively than the constitutional right to privacy?[10]

III. ANALYSIS

A. Standard of review
¶ 9 We review decisions under the PDA de novo. Former RCW 42.17.340(3) (1992), recodified as RCW 42.56.550(3) (LAWS OF 2005, ch. 483, § 5); Progressive Animal Welfare Soc'y v. Univ. of Wash., 125 Wash.2d 243, 252, 884 P.2d 592 (1994). Issues of statutory construction are also reviewed de novo. City of Redmond v. Moore, 151 Wash.2d 664, 668, 91 P.3d 875 (2004).

B. Nature and purpose of the PDA
¶ 10 The PDA was enacted by initiative in 1972. LAWS OF 1973, ch. 1. The PDA requires state and local agencies to disclose all public records[11] upon request, unless the record falls within a specific PDA exemption or other statutory exemption. Former RCW 42.17.260(1) (1997), recodified as RCW 42.56.070(1) (LAWS OF 2005, ch. 274, § 284). If a portion of a public record is exempt, that portion should be redacted and the remainder disclosed. Id. An agency withholding public records bears the burden of proving "that refusal to permit public inspection and copying is in accordance with a statute that exempts or prohibits disclosure in whole or in part of specific information or records." Former RCW 42.17.340(1).
¶ 11 The policy behind the PDA is to ensure "full access to information concerning the conduct of government on every level," while remaining "[m]indful of the right of individuals to privacy." RCW 42.17.010(11). We have consistently construed the PDA as "a strongly worded mandate for broad disclosure of public records." Hearst Corp. v. Hoppe, 90 Wash.2d 123, 127, 580 P.2d 246 (1978). Thus, the PDA's disclosure provisions are liberally construed and its exemptions are narrowly construed. Former RCW 42.17.251 (1992), amended and recodified as RCW 42.56.030 (LAWS OF 2005, ch. 274, §§ 103, 283); see also Koenig v. City of Des Moines, 158 Wash.2d 173, 180, 142 P.3d 162 (2006).

C. Where a public school teacher is the subject of an unsubstantiated allegation of sexual misconduct, disclosure of his or her identity violates the teacher's right to privacy under former RCW 42.17.255
¶ 12 The PDA exempts from disclosure "[p]ersonal information in files maintained for employees, appointees, or elected *145 officials of any public agency to the extent that disclosure would violate their right to privacy." Former RCW 42.17.310(1)(b) (2002), amended and recodified as RCW 42.56.230(2) (LAWS OF 2005, ch. 274, § 403). To determine whether the identities of teachers who are the subjects of unsubstantiated allegations of sexual misconduct fall within this exemption, we must decide (1) whether the allegations constitute personal information, (2) whether the teachers have a right to privacy in their identities, and (3) whether disclosure of the teachers' identities would violate their right to privacy.

1. Allegations of sexual misconduct against a teacher constitute personal information under former RCW 42.17.310(1)(b)
¶ 13 "[I]n determining the meaning of a statute enacted through the initiative process, the court's purpose is to ascertain the collective intent of the voters who, acting in their legislative capacity, enacted the measure." Amalgamated Transit Union Local 587 v. State, 142 Wash.2d 183, 205, 11 P.3d 762, 27 P.3d 608 (2001). "Where the language of an initiative enactment is `plain, unambiguous, and well understood according to its natural and ordinary sense and meaning, the enactment is not subject to judicial interpretation.'" Id. (quoting State v. Thorne, 129 Wash.2d 736, 762-63, 921 P.2d 514 (1996)). "`In construing the meaning of an initiative, the language of the enactment is to be read as the average informed lay voter would read it.'" State v. Brown, 139 Wash.2d 20, 28, 983 P.2d 608 (1999) (quoting W. Petroleum Imps., Inc. v. Friedt, 127 Wash.2d 420, 424, 899 P.2d 792 (1995)).
¶ 14 The PDA does not define "personal information." "[P]ersonal" is ordinarily defined as "of or relating to a particular person: affecting one individual or each of many individuals: peculiar or proper to private concerns: not public or general." WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 1686 (2002). Thus, information relating to or affecting a particular individual, information associated with private concerns, or information that is not public or general constitutes personal information under former RCW 42.17.310(1)(b).[12]
¶ 15 At issue in this case are two types of information: (1) the identities of the teachers who are the subjects of the allegations and (2) letters of direction. The teachers' identities are clearly "personal information" because they relate to particular people. As for the letters of direction, we previously held that employee evaluations constitute personal information within the meaning of former RCW 42.17.310(1)(b). Dawson v. Daly, 120 Wash.2d 782, 797, 845 P.2d 995 (1993), abrogated in part by Soter v. Cowles Publ'g Co., 162 Wash.2d 716, 174 P.3d 60 (2007). We noted, "[e]mployee evaluations qualify as personal information that bears on the competence of the subject employees." Id.
¶ 16 Likewise, the letters of direction contain information regarding the school districts' criticisms and observations of the Doe employees that relate to their competence as education professionals. We hold letters of direction constitute "`[p]ersonal information'" within the meaning of former RCW 42.17.310(1)(b).
¶ 17 Because the identities of public school teachers alleged to have committed sexual misconduct is personal information under the PDA, we now turn to whether the teachers have a right to privacy in such personal information. The letters of direction are addressed separately in a subsequent section.

*146 2. Teachers who are the subjects of unsubstantiated allegations of sexual misconduct have a right to privacy in their identities
¶ 18 Personal information is exempt from disclosure only to the extent disclosure violates an employee's right to privacy. Former RCW 42.17.310(1)(b). The PDA sets forth a test for determining when the right to privacy is violated, former RCW 42.17.255 (1987), but does not explicitly identify when the right to privacy in question exists. In enacting former RCW 42.17.255, the legislature stated that the term "privacy" "is intended to have the same meaning as the definition given that word by the Supreme Court in `Hearst v. Hoppe.'" LAWS OF 1987, ch. 403, § 1.
¶ 19 In Hearst, we defined "right to privacy" in the context of former RCW 42.17.310(1)(c) by looking to the common law tort of invasion of privacy by public disclosure of private facts. 90 Wash.2d at 135, 580 P.2d 246. We adopted the definition of "invasion of privacy" as provided in Restatement (Second) of Torts § 652D (1977) (§ 652D) which reads, "`[o]ne who gives publicity to a matter concerning the private life of another is subject to liability to the other for invasion of privacy, if the matter publicized is of a kind that (a) would be highly offensive to a reasonable person and (b) is not of legitimate concern to the public.'" Hearst, 90 Wash.2d at 135-36, 580 P.2d 246 (quoting § 652D).
¶ 20 A person has a right to privacy in "`matter[s] concerning the private life.'" Id. at 135, 580 P.2d 246 (quoting § 652D). One of the comments to § 652D illustrates the nature of facts that could be considered matters concerning the private life.
"Every individual has some phases of his life and his activities and some facts about himself that he does not expose to the public eye, but keeps entirely to himself or at most reveals only to his family or to close personal friends. Sexual relations, for example, are normally entirely private matters, as are family quarrels, many unpleasant or disgraceful or humiliating illnesses, most intimate personal letters, most details of a man's life in his home, and some of his past history that he would rather forget. When these intimate details of his life are spread before the public gaze in a manner highly offensive to the ordinary reasonable man, there is an actionable invasion of his privacy, unless the matter is one of legitimate public interest."
Id. at 136, 580 P.2d 246 (quoting § 652D cmt. b).[13]
¶ 21 A public employee has a right to privacy in some information within a personnel file, but the scope of this right is unclear. In Cowles Publishing Co. v. State Patrol, 109 Wash.2d 712, 727, 748 P.2d 597 (1988) (plurality opinion), we held a police officer's right to privacy is not violated when a complaint about a specific instance of misconduct, substantiated after an internal investigation, is disclosed. We stated, "[i]nstances of misconduct of a police officer while on the job are not private, intimate, personal details of the officer's life" because the misconduct "occurred in the course of public service."[14]Id. *147 at 726, 748 P.2d 597. Yet, we also noted, "complaints which were later dismissed[] would constitute a more intrusive invasion of privacy." Id. at 725, 748 P.2d 597.
¶ 22 In Brouillet v. Cowles Publishing Co., 114 Wash.2d 788, 797-98, 791 P.2d 526 (1990), we held records specifying the reasons for revoking a teacher's certification must be disclosed, but we did not indicate whether such records were protected by the right to privacy. Instead, we cited the two-prong test of former RCW 42.17.255 as the definition of privacy. Id. We then concluded the records were of legitimate public interest because they contained "information about the extent of known sexual misconduct in the schools." Id. at 798, 791 P.2d 526 (emphasis added). We did not address whether teachers have a right to privacy in unsubstantiated allegations of sexual misconduct.
¶ 23 In Dawson, we held disclosure of a deputy prosecutor's performance evaluation violated the prosecutor's right to privacy.[15] 120 Wash.2d at 800, 845 P.2d 995. We noted, "[s]peaking generally about the right of privacy, we have stated that the right of privacy applies `only to the intimate details of one's personal and private life.'" Id. at 796, 845 P.2d 995. We then determined an employee evaluation contains personal information and applied the test of former RCW 42.17.255 without making the threshold determination of whether the prosecutor had a right to privacy in the evaluation. Id. at 797-98, 845 P.2d 995. We concluded disclosure of a performance evaluation would violate the prosecutor's right to privacy because it would be highly offensive and the public does not have a legitimate concern in such information.[16]Id. at 796-98, 845 P.2d 995.
¶ 24 In short, we previously determined that when a complaint regarding misconduct during the course of public employment is substantiated or results in some sort of discipline, an employee does not have a right to privacy in the complaint. We have also held performance evaluations are protected by the right of privacy. The remaining issue is whether a person has a right to privacy in false or unsubstantiated allegations of misconduct.
¶ 25 An unsubstantiated or false accusation of sexual misconduct is not an action taken by an employee in the course of performing public duties and, thus, the accusation does not fall within the same category as Cowles. Nor have these accusations resulted in any form of discipline, such as the revocation of a teaching certificate in Brouillet. The fact of the allegation, not the underlying conduct, does not bear on the teacher's performance or activities as a public servant.[17] *148 The mere fact of the allegation of sexual misconduct toward a minor may hold the teacher up to hatred and ridicule in the community, without any evidence that such misconduct ever occurred. The fact that a teacher is accused of sexual misconduct is a "matter concerning the private life" within the Hearst definition of the scope of the right to privacy. Hearst, 90 Wash.2d at 135, 580 P.2d 246. Thus, we hold the teachers have a right to privacy in their identities because the unsubstantiated or false allegations are matters concerning the teachers' private lives and are not specific incidents of misconduct during the course of employment.

3. Disclosure of unsubstantiated allegations of sexual misconduct violates a teacher's right to privacy under former RCW 42.17.310(1)(b)
¶ 26 "A person's `right to privacy'" is "violated only if disclosure of information about the person: (1) Would be highly offensive to a reasonable person, and (2) is not of legitimate concern to the public." Former RCW 42.17.255.

a. Disclosure of the identities of teachers who are the subjects of unsubstantiated allegations of sexual misconduct is highly offensive
¶ 27 It is undisputed that disclosure of the identity of a teacher accused of sexual misconduct is highly offensive to a reasonable person.[18]See Dawson, 120 Wash.2d at 796, 845 P.2d 995 (holding disclosure of performance evaluations that do not discuss specific instances of misconduct are presumed to be highly offensive); City of Tacoma v. Tacoma News, Inc., 65 Wash.App. 140, 145, 827 P.2d 1094 (1992) (noting that it is undisputed that disclosure of unsubstantiated allegations of child abuse is highly offensive to a reasonable person). Having concluded that disclosure of the identities of teachers accused of sexual misconduct is highly offensive to a reasonable person, our next step is to determine whether the identities are of legitimate public concern.

b. The public does not have a legitimate concern in the identities of teachers who are the subjects of unsubstantiated allegations of sexual misconduct
¶ 28 The second question is whether the identities of teachers who are the subjects of unsubstantiated allegations of sexual misconduct are a matter of legitimate public concern. "`[L]egitimate'" means "`reasonable.'" Dawson, 120 Wash.2d at 798, 845 P.2d 995. "[O]ne factor bearing on whether information is of legitimate concern to the public is whether the information is true or false." Tacoma News, 65 Wash.App. at 148, 827 P.2d 1094. Generally, "the public as a rule has no legitimate interest in finding out the names of people who have been falsely accused." Bellevue John Does, 129 Wash. App. at 853, 120 P.3d 616; Tacoma News, 65 Wash.App. at 148, 827 P.2d 1094.
¶ 29 The trial court looked at whether the allegations were substantiated to determine whether there was a legitimate public interest in the records, believing the public lacks a legitimate concern in unsubstantiated allegations.[19] The Court of Appeals disagreed with the trial court's analysis, concluding the public has a legitimate concern in knowing the names of teachers who are the subjects of unsubstantiated allegations, but not patently *149 false claims. Bellevue John Does, 129 Wash.App. at 855-57, 120 P.3d 616. The Court of Appeals reasoned the public has a legitimate concern in the identities of teachers who are the subjects of unsubstantiated allegations because
"unsubstantiated" often means only that an investigator, faced with conflicting accounts, is unable to reach a firm conclusion about what really happened and who is telling the truth. Especially when the conduct reported is a fleeting touch, a comment seemingly off-color or directed at a student's physical appearance, or a habit of writing personal notes, it is possible that the accuser misunderstood the words, misinterpreted the intent, or even fabricated the entire event. But it is also possible that the accuser was accurately reporting inappropriate conduct. Where that possibility exists, the public has a legitimate interest in knowing the name of the accused teacher.
Id. at 856, 120 P.3d 616.
¶ 30 As a preliminary matter, we choose to address whether the public has a legitimate concern in the identities of teachers who are the subjects of unsubstantiated claims of sexual misconduct rather than patently false claims. Making a distinction between "unsubstantiated" and "patently false" is vague and impractical. Placing the burden on agencies and courts to determine whether allegations are patently false rather than simply unsubstantiated is unworkable, time consuming, and, absent specific rules and guidelines, likely to lead to radically different methods and conclusions. For example, in this case the Court of Appeals gave little guidance to agencies and courts as to when an allegation should be deemed "false" as opposed to "unsubstantiated"; instead, the court embarked on its own fact-finding inquiry and made these determinations itself, ultimately concluding the allegations against Federal Way John Doe 1, Seattle John Doe 1, and Seattle John Doe 7 were "patently false," and, therefore, the identities of those teachers were exempt from disclosure. Id. at 857, 120 P.3d 616.
¶ 31 The trial court's rule that the identities of teachers who are subjects of unsubstantiated allegations (which would, of course, include patently false allegations) should remain undisclosed is a clearer, more feasible solution. Moreover, the legislature already distinguishes between substantiated and unsubstantiated allegations of sexual misconduct in schools. When a current or former school employee applies for a job in a new school district, the former school district employer must provide the new school district with all of the information related to sexual misconduct in the applicant's personnel record. RCW 28A.400.301(4). Sexual misconduct is defined for purposes of RCW 28A.400.301 to only include instances where "the school district has made a determination that there is sufficient information to conclude that the abuse or misconduct occurred and that the abuse or misconduct resulted in the employee's leaving his or her position at the school district." RCW 28A.400.301(11); WAC 181-88-060 ("For purposes of this section, sexual misconduct occurs only when a school district determines it has sufficient information to conclude that an employee engaged in the sexual misconduct."). If the legislature did not require release of unsubstantiated claims between school districts, it is difficult to imagine that the legislature intended public disclosure of the same.
¶ 32 We now turn to whether the public has a legitimate concern in the identities of teachers who are the subjects of unsubstantiated allegations of sexual misconduct. The Times argues that regardless of the outcome of an investigation, the names of teachers who are alleged to have committed sexual misconduct are of legitimate public concern under our decision in Brouillet, 114 Wash.2d 788, 791 P.2d 526. See Suppl. Br. of Resp't Times at 13. In Brouillet, we held records specifying the reasons for the revocation of teacher certificates should be disclosed pursuant to a proper PDA request. 114 Wash.2d at 790, 791 P.2d 526. We opined,
[s]exual abuse of students is a proper matter of public concern because the public must decide what can be done about it. The public requires information about the extent of known sexual misconduct in the schools, its nature, and the way the school *150 system responds in order to address the problem.
Id. at 798, 791 P.2d 526 (emphasis added).[20] However, Brouillet did not address whether unsubstantiated allegations, rather than known sexual misconduct, were a matter of legitimate public concern and it is not dispositive of the issue in this case.
¶ 33 Next, we turn to the Times' argument that the public has a legitimate concern in monitoring the school districts' investigations of allegations of sexual misconduct and the identity of the accused is imperative to the effectiveness of such monitoring. The trial court determined that while the public has a legitimate concern in school district investigations of allegations of sexual misconduct, the public does not have a legitimate concern in the identities of teachers who are the subjects of unsubstantiated allegations because their identities do not aid the public in overseeing the government's response to the allegations. In contrast, the Court of Appeals determined that the public has a legitimate concern in the identities of teachers whose allegations are deemed unsubstantiated because a pattern of unsubstantiated complaints against a single teacher is indicative of the truthfulness of such allegations.[21]
¶ 34 Precluding disclosure of the identities of teachers who are subjects of unsubstantiated allegations will not impede the public's ability to oversee school districts' investigations of alleged teacher misconduct. As noted by amicus American Civil Liberties Union of Washington (ACLU-WA), "[t]he identity of the accused ... is unnecessary, and plays little role in the public's oversight of the investigation. The name is most relevant to public oversight if the misconduct occurred if the misconduct didn't occur, the only actual governmental action is the investigation." Amicus Curiae Br. of ACLU-WA at 6 (Br. of ACLU-WA). Amicus Washington Education Association (WEA) agrees, adding, "there simply is no legitimate public concern in the name of the accused unless there is a finding of wrongdoing. The alternative is too damaging to a person's career ... without a corresponding public benefit." Suppl. Br. of Amicus Curiae WEA in Supp. of Pet'rs at 4 (Br. of WEA).
¶ 35 When an allegation is unsubstantiated, the teacher's identity is not a matter of legitimate public concern. In essence, disclosure of the identities of teachers who are the subject of unsubstantiated allegations "serve[s] no interest other than gossip and sensation." Bellevue John Does, 129 Wash. App. at 854, 120 P.3d 616. The public can continue to access documents concerning the nature of the allegations and reports related to the investigation and its outcome, all of which will allow concerned citizens to oversee the effectiveness of the school districts' responses. The identities of the accused teachers will simply be redacted to protect their privacy interests. See former RCW 42.17.260(1) (providing that agencies may delete names and other identifying information from records if such deletions are "required to prevent an unreasonable invasion of personal privacy").
¶ 36 Finally, we consider whether the quality of a school district's investigation should determine whether an individual's right to privacy is violated. The trial court determined that if an investigation is inadequate, the identity of the accused teacher is a matter of legitimate public concern. This rule fails to adequately protect teachers' privacy *151 rights and incorrectly presumes that the presence of an allegation is indicative of increased likelihood of misconduct.[22] "[W]hether or not there was an adequate investigation should not, as a policy matter, determine the accused's right to privacy because the accused has no control over the adequacy of the investigation." Br. of WEA at 13-14. Furthermore, the trial court's rule is inconsistent with the intent of the PDA and our determination that the identities of teachers accused of sexual misconduct should be released only if a school district has found the allegations to be substantiated. Finally, a rule that necessarily involves a court's examination of the quality of a school district's investigation is neither clear nor easily applied.[23]
¶ 37 The Times worries that withholding the identities of teachers who are the subjects of inadequate investigations may allow school districts to get away with less than acceptable investigations and permit teachers (whose reputations have not been cleared by thorough investigations) to avoid public scrutiny of their alleged misconduct.[24] But the problem of inadequate investigations and the desired standards for such investigations are entirely separate issues. Under our holding, the public can access documents related to the allegations and investigations (subject to redactions), thus maintaining the citizens' ability to inform themselves about school district operations.
¶ 38 Furthermore, other provisions of the PDA make it unlikely that an agency will routinely make self-serving determinations of whether a public record must be disclosed. A requester may challenge the agency's decision, which is reviewed de novo, and significant penalties and attorney fees may be imposed if the agency fails to comply with the PDA. For the reasons stated above, the identities of teachers who are subjects of unsubstantiated complaints should not be disclosed, regardless of the quality of the investigation.
¶ 39 Thus, we hold that the public lacks a legitimate interest in the identities of teachers who are the subjects of unsubstantiated allegations of sexual misconduct because the teachers' identities do not aid in effective government oversight by the public and the teachers' right to privacy does not depend on the quality of the school districts' investigations.

D. A letter of direction is not exempt from disclosure under the PDA, but where a letter does not identify substantiated misconduct and the teacher is not subject to any form of discipline or restriction, the teacher's name and other identifying information must be redacted
¶ 40 Having already established that a letter of direction is personal information, we now turn to whether a teacher has a right to privacy in a letter of direction. In Dawson, we assumed a prosecutor had a right to privacy in his or her performance evaluations. See 120 Wash.2d at 796-99, 845 P.2d 995. We see no reason to depart from this *152 precedent. Teachers have a right to privacy in the letters of direction in their personnel files. Thus, we turn to whether disclosure of the letters of direction violates the teachers' right to privacy.

1. Disclosure of an unredacted letter of direction is highly offensive if the letter does not identify substantiated misconduct and the teacher is not subject to any form of discipline or restriction
¶ 41 In Dawson, we held "that disclosure of performance evaluations, which do not discuss specific instances of misconduct, is presumed to be highly offensive." Id. at 797, 845 P.2d 995. We went on to note that such disclosure may not be highly offensive if information that would identify a specific employee was redacted. Id. In Cowles, we noted that disclosure of complaints against law enforcement officers that were later dismissed was more offensive than complaints that resulted in some discipline. 109 Wash.2d at 725, 748 P.2d 597.
¶ 42 In this case, the letters of direction discuss specific alleged misconduct but do not mention any substantiated misconduct by the teachers. Following our analysis above regarding disclosure of the actual allegations, disclosure of a teacher's identity would be highly offensive if the letter of direction does not identify substantiated misconduct and the teacher is not disciplined or subjected to any restriction.
¶ 43 If a teacher's identity is redacted, disclosure of the redacted letter of direction is not highly offensive. Teacher petitioners urge us to treat letters of direction as routine employment evaluations exempt from disclosure under Dawson, 120 Wash.2d at 798, 845 P.2d 995. However, teacher petitioners fail to establish how disclosure of a letter of direction is highly offensive if all identifying information is redacted. If disclosure is not highly offensive under former RCW 42.17.255, we need not determine whether there is a legitimate public concern in redacted letters of direction. Thus, we turn to whether there is a legitimate public concern in the identities of teachers who are the subjects of letters of direction that do not identify any substantiated allegations or impose any discipline.

2. The public does not have a legitimate concern in the identities of teachers who are the subjects of letters of direction when such letters do not identify any substantiated misconduct or impose any discipline
¶ 44 The public does not have a legitimate concern in unredacted letters of direction when such letters do not identify any substantiated allegations or impose any discipline. While our inquiry into the legitimacy of the public's concern cannot take into account the identity of the requesting party or the purpose of the request, former RCW 42.17.270 (1987), amended and recodified as RCW 42.56.080 (LAWS OF 2005, ch. 483, § 1, ch. 274, § 285), the legitimacy of the public's concern should be viewed in the context of the PDA. Dawson, 120 Wash.2d at 797-798, 845 P.2d 995.
¶ 45 The PDA seeks to provide people with full access to public records while remaining "mindful of the right of individuals to privacy and of the desirability of the efficient administration of government." RCW 42.17.010(11). "Requiring disclosure where the public interest in efficient government could be harmed significantly more than the public would be served by disclosure is not reasonable." Dawson, 120 Wash.2d at 798, 845 P.2d 995. In Dawson, we determined that while "the public has some degree of interest in ... the evaluations of prosecutors," legitimate public concern is lacking in light of the potential harm caused by disclosure. Id. at 799, 845 P.2d 995. We cited the erosion of employee morale as a possible harm resulting from the disclosure of employee evaluations, along with the "`chill[ing] [of] candor in the evaluation process.'" Id. at 799, 845 P.2d 995 (quoting Ripskis v. Dep't of Hous. & Urban Dev., 241 U.S.App. D.C. 8, 746 F.2d 1, 3 (1984)).
¶ 46 Here, we are urged to prevent disclosure of the teachers' identities because of potential harm to the school districts and an invasion of the teachers' privacy. Teacher petitioners point out numerous harmful effects resulting from disclosure of letters of *153 direction, including a decline in the reporting of allegations, unwillingness by supervisors to memorialize any communications regarding alleged misconduct, and the loss of institutional knowledge when a supervisor leaves a school district because previous communications with employees were not in writing. See Pet. for Review at 16. Respondent Federal Way School District (FWSD) observes that if letters of direction are released to the public, "[d]espite the letter of direction serving merely as an evaluative, supervisory tool, employees will view the potential public disclosure of such letters as threatening their professional reputations, and therefore worthy of vigorous challenge." Br. of Resp't FWSD at 7.
¶ 47 Amicus ACLU-WA echoes these concerns, asserting that disclosure of teacher identities and letters of direction may result in qualified teachers avoiding the profession, a reluctance to work with "difficult" or challenging students, and the avoidance or hesitation on the part of administrators to issue letters of direction out of fear that teachers will file costly grievance procedures. Br. of ACLU-WA at 9-10. Most importantly, notes amicus ACLU-WA, if letters of direction are disclosed to the public, schools will lose the valuable opportunity to address and correct minor professional conduct issues.
Investigations into alleged misconduct often reveal behaviors that cannot fairly be described as "misconduct," but nonetheless fail to meet desired professional standards. There is value in allowing a supervisor or investigator to suggest changes in behavior, or remind employees of desired standards. But if these suggestions are opened to public view, it is likely that many supervisors will instead choose to remain silent, or at least not use written direction, so as not to tarnish a generally good employee's reputation.
Id. at 11.
¶ 48 The trial court determined that disclosure of unredacted letters of direction would "substantially and irreparably damage vital government functions because it would chill employer-employee communications by making all written communications between employer and employee subject to disclosure." CP at 100, ¶ 10. The Court of Appeals was not persuaded that the negative impact of disclosing letters of direction outweighed the public interest articulated in Brouillet and ordered that the unredacted letters of direction be disclosed.[25]Bellevue John Does, 129 Wash.App. at 848-49, 120 P.3d 616.
¶ 49 We find that there is no legitimate public concern in information identifying the teachers within the letters of direction but that disclosure of redacted letters of direction does not violate the teachers' right to privacy because it is not highly offensive. Thus, we hold that the PDA mandates disclosure of letters of direction; however, where a letter simply seeks to guide future conduct, does not mention substantiated misconduct, and a teacher is not disciplined or subject to any restriction, the name and identifying information of the teacher should be redacted. This result protects both the public interest in overseeing school districts' responses to allegations (letters of direction give citizens a complete picture of a school district's investigations and accompanying procedures) and the teacher's individual privacy rights.

IV. CONCLUSION
¶ 50 We reverse the Court of Appeals in part. We hold a teacher's identity should be released under the PDA only when alleged sexual misconduct has been substantiated or when that teacher's conduct results in some form of discipline, even if only a reprimand. Letters of direction and related documents must be disclosed under the PDA, but where a letter simply seeks to guide future conduct, does not identify an incident of substantiated misconduct, and does not subject the teacher to any form of restriction or discipline, a teacher's name and other identifying information must be redacted.
*154 ¶ 51 The case is remanded for further proceedings consistent with this opinion.
ALEXANDER, C.J., OWENS, J. JOHNSON, JJ., and BRIDGE, J.P.T., concur.
CHAMBERS, J., concurs in result only.
MADSEN, J. (dissenting).
¶ 52 In Hearst Corporation v. Hoppe, 90 Wash.2d 123, 580 P.2d 246 (1978), this court adopted Restatement (Second) of Torts § 652D (1977), which recites the common law, as the definition of the "right of privacy" in the Public Records Act (PRA), chapter 42.56 RCW.[1] In 1987, the legislature explicitly stated that the definition adopted in Hearst is the legislatively intended meaning that "right of privacy" has under the PRA. Laws of 1987, ch. 403, § 2, at 1547.
¶ 53 Without justification, the majority refuses to accept the common law meaning set out in Hearst. In reformulating the definition of "right to privacy," the majority disregards the legislature's intent that the common law definition explicitly adopted by the court in Hearst is what the term "right of privacy" means.
¶ 54 Building on its mistake, the majority concludes that only substantiated allegations of sexual misconduct are disclosable. However, this distinction is contrary to the PRA. Instead, where the records concern allegations of misconduct occurring in the course of carrying out public duties they are disclosable under the PRA regardless of whether the allegations are true.
¶ 55 It is important to bear in mind that unsubstantiated does not mean untrue. A 2004 report prepared for the United States Department of Education attests to the fact that sexual misconduct by educators abusing children in the public schools, including the public schools in Washington State, is an extremely serious and inadequately addressed problem. POLICY & PROGRAM STUDIES SERV., U.S. DEP'T OF EDUC, EDUCATOR SEXUAL MISCONDUCT: A SYNTHESIS OF EXISTING LITERATURE (2004) (hereafter EDUCATOR SEXUAL MISCONDUCT). This report states that 9.6 percent of all children in grades 8 to 11 suffer educator sexual misconduct. EDUCATOR SEXUAL MISCONDUCT at 17-18.[2] "[M]ore than 4.5 million students are subject to sexual misconduct by an employee of a school sometime between kindergarten and 12th grade." Id. at 18. But because school districts often do not adequately investigate, allegations of such misconduct are incorrectly recorded as unsubstantiated.
¶ 56 Under the majority's holding, the public in Washington will not have access to information necessary for determining whether the State's school districts satisfactorily address allegations of teacher sexual misconduct. As a consequence, predatory teachers may go undetected and unpunished. But the most unfortunate consequence, and one that is completely unacceptable, is that if predatory teachers are undetected, children will continue to suffer at their hands. I dissent.

ANALYSIS
¶ 57 The issue before the court in this case is whether records pertaining to allegations *155 of teachers' sexual misconduct against students constitutes the type of personal information encompassed by the right of privacy as described at common law and, if so, would disclosure of this material violate the right. The inquiry involves a two-part analysis and the second question, whether the right has been violated, arises only if the court first determines that the information is protected by the right to privacy.
¶ 58 In Hearst, this court concluded that the "right of privacy" means "what it meant at common law," specifically, the definition in the Restatement (Second) of Torts § 652D (1977) (§ 652D). Hearst, 90 Wash.2d at 135, 580 P.2d 246. The court then went on to explain what kind of information falls within the protected right, again with resort to the common law as described in the Restatement: "The comment to the Restatement illustrates what nature of facts are protected by this right to privacy." Hearst, 90 Wash.2d at 135-36, 580 P.2d 246 (emphasis added). The information encompassed within the right of privacy are the "`intimate details'" of a person's life, for example, "`[s]exual relations,... family quarrels, many unpleasant or disgraceful or humiliating illnesses, most intimate personal letters, most details of a man's life in his home, and some of his past history that he would rather forget.'" Id. (quoting § 652D cmt. b).
¶ 59 In subsequent cases, this court and the Court of Appeals have adhered to "the standard and analysis "of the Restatement, Hearst, 90 Wash.2d at 136, 580 P.2d 246 (emphasis added), reaffirming that the right to privacy concerns "the intimate details of one's personal and private life," Spokane Police Guild v. Liquor Control Bd., 112 Wash.2d 30, 38, 769 P.2d 283 (1989); see also Cowles Publ'g Co. v. State Patrol, 109 Wash.2d 712, 720-23, 726, 748 P.2d 597 (1988) ("the court must first decide whether the matters to be disclosed involve `personal privacy' as defined by § 652D to wit: intimate details of one's personal and private life"), overruled on other grounds by Brouillet v. Cowles Publ'g Co., 114 Wash.2d 788, 791 P.2d 526 (1990); Dawson v. Daly, 120 Wash.2d 782, 796, 845 P.2d 995 (1993), overruled on other grounds by Progressive Animal Welfare Soc'y v. Univ. of Wash., 125 Wash.2d 243, 884 P.2d 592 (1995) (PAWS); Yakima Newspapers, Inc. v. City of Yakima, 77 Wash.App. 319, 327, 890 P.2d 544 (1995).
¶ 60 Not only did this court specifically and expressly adopt this common law definition of the right of privacy, including the description of the nature of the information protected, and reaffirm it thereafter, but also the legislature stated in 1987 that the definition adopted in Hearst is the legislatively intended meaning that "right of privacy" has under the act. Laws of 1987, ch. 403, § 2, at 1547 ("`privacy' ... is intended to have the same meaning as the definition given that word by the Supreme Court in Hearst"). The legislature also enacted legislation stating that the right of privacy "is invaded or violated only if disclosure of information about the person: (1) Would be highly offensive to a reasonable person, and (2) is not of legitimate concern to the public." RCW 42.56.050 (emphasis added); see Laws of 1987, ch. 403, § 2. This statute, like § 652D of the Restatement, describes when a violation of the right to privacy occurs, but does not tell us what information is encompassed by the right. For this, the rest of the explanation in Hearst is necessary, i.e., the right of privacy generally protects from disclosure the intimate details of one's personal and private life.
¶ 61 The majority rejects this established description of the kind of information encompassed by the right of privacy, saying that the PRA does not state or imply in RCW 42.56.050 that the right of privacy is so limited. Majority at 142 n. 13 (citing former RCW 42.17.255 (1987)). But the act does not define the term at all and instead the legislature expressly said this court's definition in Hearst is the meaning that the right to privacy has under the act, including the description of the kind of information falling within the right  the intimate details of one's personal and private life. I believe the court should follow the legislature's directive and give "right to privacy" the meaning the legislature has said it has  the meaning, the full meaning, stated in Hearst.
¶ 62 Under the correct definition of right to privacy, the teachers have no right to *156 privacy in their identities. The Times contends that allegations of teacher sexual misconduct relate to teachers' interactions with students in the course of the public performance of their teaching duties. Therefore, the Times reasons, RCW 42.56.050 is not triggered because it applies only when information protected by the right of privacy is requested. The Times contends that public performance of teaching duties it is not information that is encompassed by the right of privacy and therefore it is not information falling within the employee privacy exemption on which the teachers rely.
¶ 63 The Times is correct that the material in a teacher's file relating to allegations of sexual misconduct involving students is not information that is protected by the right of privacy. It does not pertain to the intimate details of one's personal and private life but is instead information about alleged specific instances of misconduct occurring in the course of the teacher's performance of his or her public duties  a kind of information that this court has specifically identified as not encompassed by the right of privacy.
¶ 64 Appellate cases addressing privacy exemptions confirm that information relating to the performance of public duties, no matter how embarrassing is not information protected by the right of privacy. In Dawson, 120 Wash.2d at 796, 845 P.2d 995, the court carefully limited its holding that a routine employee evaluation is the kind of information subject to the test of RCW 42.56.050. The court distinguished from routine employee evaluations those evaluations that address specific instances of misconduct or the performance of public duties. Dawson, 120 Wash.2d at 796-97, 845 P.2d 995.[3] This distinction was central to the analysis in Cowles Publishing, which the court acknowledged in Dawson, 120 Wash.2d at 795-96, 845 P.2d 995.
¶ 65 In Cowles Publishing, the court considered whether the PRA required disclosure of the names of law enforcement officers against whom complaints had been upheld following internal investigations. One issue was whether the release of the officers' names would constitute an unreasonable invasion of privacy. A seven-member majority of the court agreed on the privacy analysis (the four-member lead opinion and the three-member dissent authored by Justice Dolliver), which explicitly confirmed and followed the analysis in Hearst while expressly rejecting an argument that the analysis in Hearst should be limited to its facts. Cowles Publ'g, 109 Wash.2d at 722, 748 P.2d 597.
¶ 66 The court said that
the information contained in the police investigatory reports ... does not involve private matters, but does involve events which occurred in the course of public service. Instances of misconduct of a police officer while on the job are not private, intimate, personal details of an officer's life when examined from the viewpoint of the Hearst case. They are matters with which the public has a right to concern itself.
Id. at 726, 748 P.2d 597 (emphasis added). The court concluded: "a law enforcement officer's actions while performing his public duties ... do not fall within the activities to be protected under the comment to § 652D of Restatement (Second) of Torts as a matter of `personal privacy.'" Id. at 727, 748 P.2d 597.
¶ 67 The Court of Appeals in Columbian Publishing Co. v. City of Vancouver, 36 Wash.App. 25, 29-30, 671 P.2d 280 (1983), similarly rejected a claim that disclosure of police officers' complaints against the police chief would violate the privacy rights of the police chief. The court concluded that because *157 the statements concerned the police chief's professional job performance they did not violate the police chief's right to privacy and were not exempt from disclosure.
¶ 68 In accord with Dawson, Cowles Publishing, and Columbian Publishing, information about specific instances of misconduct occurring in the course of performance of public duties is not protected by the right of privacy. A teacher's interactions with students at school or in connection with school-related events, programs, and duties, occurring during the teacher's performance of his or her public duties, are not protected by the right of privacy. They do not concern the intimate details of a teacher's private and personal life, or information obtained during employee performance evaluations, or other private information in employment records that, as Dawson noted, routinely include information relating to things like family problems, health problems, employers' criticisms and observations, military records or similar records, or scores from IQ (intelligence quotient) tests and other performance tests. Instead, they relate to allegations of specific instances of misconduct while performing public duties. Accordingly, an allegation of a teacher's sexual misconduct against a student is not information protected by the right to privacy and therefore the privacy exemption should not apply. Because the information is not of the kind protected by the right to privacy, the court should not reach the question whether under the two-part test of RCW 42.56.050 the right to privacy would be violated by disclosure of the teachers' identities, i.e., whether "`the matter publicized is of a kind that (a) would be highly offensive to a reasonable person, and (b) is not of legitimate public concern.'" Hearst, 90 Wash.2d at 135-36, 580 P.2d 246 (quoting § 652D). The teachers' identities are required to be disclosed under the PRA and the employee privacy exemption of 42.56.230(2) does not apply.
¶ 69 The majority says, however, that an accusation of sexual misconduct is not an action taken by an employee in the course of performing public duties and therefore does not fall within the same category as in Cowles. Majority at 147. First, the "accusation" of misconduct is not the action taken by the employee; rather, it is the employee's alleged conduct, not the student's accusation that is the focus of the right to privacy inquiry. Second, the majority's belief that if the accusation is unsubstantiated, then the conduct does not occur within the scope of public duties is in fact contrary to Cowles. As previously mentioned, the information sought in Cowles was the identity of individuals against whom the charges of misconduct occurring in the course of public duties had been laid. Whether substantiated or unsubstantiated, the misconduct alleged is misconduct occurring during the course of public duties. Third, the majority's criticism, majority at 147-48 n. 17, that I have misconstrued Cowles fails to recognize the fact that public school teachers who prey on school children do so in the course of performing their public duties.
¶ 70 In addition, the majority's belief that whether the accused teachers' identities must be disclosed depends upon substantiating the accusations is also erroneous. Because the majority fails to understand what constitutes personal information encompassed by the right of privacy, the majority concludes that where records concern allegations of unsubstantiated sexual misconduct, the privacy exemption protects teachers' identities from disclosure. But the majority's distinction between substantiated and unsubstantiated claims is not supported by the statutory language of the PRA or by case law that holds that even allegations of misconduct that are false may be ordered disclosed. Thus, the fact that the misconduct may be unsubstantiated, or the allegation even untrue, does not mean the teachers' identities must be protected from disclosure. For example, in Columbian Publishing, 36 Wash.App. at 27, 29-30, 671 P.2d 280, the complaints against the police chief were ordered released when no conclusions had been reached about those complaints.
¶ 71 Moreover, the majority's analysis fails to account for one of the underlying purposes of the PRA  accountability of public agencies. Because the majority decides that a teacher's identity is not disclosable where the misconduct is unsubstantiated, and rejects *158 the idea that the adequacy of a school district's investigation has any bearing on disclosure, the majority leaves school districts free to control whether an accused teacher's identity must be released by controlling the scope and depth of its investigation. Drawing the line for disclosure at records relating to unsubstantiated allegations fails to recognize the immense pressures on school districts. First, school districts come under pressure from the teachers and their associations to withhold teachers' names. At the same time, if the school districts vigorously pursue allegations of sexual misconduct, they face the threat of lawsuits from students and their parents. See, e.g., Christensen v. Royal Sch. Dist. No. 160, 156 Wash.2d 62, 124 P.3d 283 (2005) (a student with whom a teacher had a sexual relationship and her parents sued a school district for negligent supervision and negligence in hiring); Cloud v. Summers, 98 Wash.App. 724, 991 P.2d 1169 (2000) (a student and the parents sued a school district for negligent supervision and retention and wrongful interference with the parent-child relationship based on a teacher's sexual abuse of the student); see generally, e.g., Janet Philibosian, Homework Assignment: The Proper Interpretation of the Standard for Institutional Liability if We Are to Protect Students in Cases of Sexual Harassment by Teachers, 33 SW. U.L.REV. 95, 95 (2003) (discussing suits against schools under Title IX).
¶ 72 The school districts may also face lawsuits from teachers because allegations of sexual misconduct can threaten a teacher's career or lead to discharge. See, e.g., Wright v. Mead Sch. Dist. No. 354, 87 Wash.App. 624, 944 P.2d 1 (1997) (review of administrative decision terminating public school teacher's employment on the basis of inappropriate sexual conduct with students); Sauter v. Mount Vernon Sch. Dist. No. 320, 58 Wash. App. 121, 791 P.2d 549 (1990) (same). Legal proceedings command financial and other resources whether successful or not.
¶ 73 A school district can effectively control whether an accused teacher's identity must be released by reaching an agreement with the teacher exchanging resignation for silence. See generally Ralph D. Mawdsley & Steven B. Permuth, Nondisclosure Provisions in School District Settlement Agreements, 163 ED. L. REP. 2 (2002); W. Richard Fossey, Confidential Settlement Agreements Between School Districts and Teachers Accused of Child Abuse: Issues of Law and Ethics, 63 ED. L. REP. 1 (1990) ("[a] covenant of non-disclosure is often included in the settlement agreement between a school district and a teacher accused of sexual molestation or other child abuse"). Id. at 2
¶ 74 The possibilities discussed above are real. In Educator Sexual Misconduct at 44, the following is reported:
In an early study of 225 cases of educator sexual abuse in New York, all of the accused had admitted to sexual abuse of a student but none of the abusers was reported to authorities and only 1 percent lost their license to teach. [Charol Shakeshaft & Audrey Cohan, In Loco Parentis: Sexual Abuse of Students in Schools 1-40 (Admin. & Policy Studies, Hofstra Univ. 1994).] All of the accused had admitted to physical sexual abuse of a student but only 35 percent received a negative consequence for their actions: 15 percent were terminated or, if not tenured, they were not rehired; and 20 percent received a formal reprimand or suspension. Another 25 percent received no consequence or were reprimanded informally and off-the-record. Nearly 39 percent chose to leave the district, most with positive recommendations or even retirement packages intact.
Lest it be thought that these statistics are irrelevant to Washington State, the following is also included in the report:
O'Hagan and Willmsen report that of 159 Washington State coaches "who were reprimanded, warned, or let go in the past decade because of sexual misconduct ... at least 98 of them continued coaching or teaching afterward." [Maureen O'Hagan & Christine Willmsen, Coaches Who Prey, THE SEATTLE TIMES, Dec. 15, 2003.] Many school districts make confidential agreements with abusers, trading a positive recommendation for a resignation. O'Hagan (2004) details two examples of coaches in Washington that illustrate this practice. [Maureen O'Hagan, Teacher Conduct Proposal *159 May Get Diluted, THE SEATTLE TIMES, Feb. 13, 2004.]
In 1995, a Sharples Alternative School student accused [a] tutor of going to her home ... and forcing her to have sex with him....
When the district investigated, [the tutor] refused to answer questions....
The district's human-resources director later told [the tutor] in a letter: "The District investigation revealed that you went to the home of one of your female students ..., you were let inside, and that you forced her to have sex with you."
Records indicate the district suspected that [the tutor] may have victimized other girls. After negotiations, the district allowed [the tutor] to resign, promising in writing not to tell future employers about the allegations.
In another example, O'Hagan (2004) reports that a Seattle educator ... had two decades of complaints of sex with students and providing alcohol and marijuana to students prior to his arrest for smuggling six tons of marijuana into the state. The district paid [him] the remainder of his salary that year, agreed to keep the record secret, and gave him an additional $69,000.
EDUCATOR SEXUAL MISCONDUCT at 44-45.
¶ 75 Placing the power in the hands of school districts to control, to any extent, whether disclosure is required is incompatible with the PRA. The court has stated many times that leaving the interpretation of the PRA to the agencies at which it is aimed "would be the most direct course to its devitalization." Hearst 90 Wash.2d at 131, 580 P.2d 246; see also Amren, 131 Wash.2d at 34 n. 6, 929 P.2d 389; Servais v. Port of Bellingham, 127 Wash.2d 820, 834, 904 P.2d 1124 (1995); Brouillet, 114 Wash.2d at 794, 791 P.2d 526. Basing disclosability on whether alleged conduct is substantiated or unsubstantiated, when that determination lies in the hands of the very agency from which disclosure is sought, does not serve the PRA's goals to ensure the sovereignty of the people and the accountability of the governmental agencies that serve them, see PAWS, 125 Wash.2d at 251, 884 P.2d 592.
¶ 76 It is no answer, contrary to the majority's suggestion, that reports of an investigation are still disclosable, just without the teacher's identity. Without sufficient information, including the identities of the teachers, the public will lack the ability to engage in the governmental oversight at the heart of the PRA. More specifically, the public will lack the information necessary to ensure that a specific teacher does not continue to have access to children, whether at the same school or another. As the Educator Sexual Misconduct report shows, a predator may move from one school to another. There is therefore much to be said for the Court of Appeals' concern, which I share, that multiple allegations of sexual misconduct can create a troubling pattern. The court explained:
[I]t is ... possible that the accuser was accurately reporting inappropriate conduct. Where that possibility exists, the public has a legitimate interest in knowing the name of the accused teacher. If a teacher's record includes a number of complaints found to be "unsubstantiated," the pattern is more troubling than each individual complaint. Yet, if the teacher's name in each individual complaint is withheld from public disclosure, the public will not see any troubling pattern that might emerge concerning that teacher.
Bellevue John Does 1-11 v. Bellevue School Dist. No. 405, 129 Wash.App. 832, 856, 120 P.3d 616 (2005).[4]
¶ 77 Moreover, a critical problem that this case brings to light, and that cannot and should not be ignored, is that accusations of sexual abuse of children by a teacher may be unsubstantiated for the same reason that child abuse in general may be unsubstantiated. The adult and the victim are often the only witnesses. See State v. C.J., 148 Wash.2d 672, 680-81, 63 P.3d 765 (2003). Additionally, studies indicate that "[e]ducator sexual predators are often well-liked and considered *160 excellent teachers." EDUCATOR SEXUAL MISCONDUCT at 49. There may be reluctance on the part of a school district to believe that a "well-liked," "excellent" teacher would engage in such misconduct, and this reluctance could be carried into any investigation of allegations  especially where the only witnesses are the teacher and the student.
¶ 78 Students are already reluctant to report sexual misconduct by teachers. Educator Sexual Misconduct at 35, explains:
When students do report, they almost always report incidents of contact sexual abuse  touching, kissing, hugging, or forced intercourse. Verbal and visual abuse are rarely reported to school officials. Of the cases that come to a superintendent's attention, nearly 90 percent are contact sexual misconduct (Shakeshaft and Cohan, 1994). When alleged misconduct is reported, the majority of complaints are ignored or disbelieved (Shakeshaft and Cohan, 1994). Other students note this lack of response and conclude that teachers (or coaches or administrators) cannot be stopped. [Charol Shakeshaft, Educator Sexual Abuse, HOFSTRA HORIZONS, Spring 2003, at 10-13.]. If the school will not act, what can a mere student do?
Few students, families, or school districts report incidents to the police or other law enforcement agencies. When criminal justice officials are alerted, it is almost always because parents have made contact. Thus, most cases are not entered into criminal justice information system (Shakeshaft and Cohan, 1994). As one consequence, abusers are subject only to informal personnel actions within the relative privacy of school employee records (Shakeshaft and Cohan, 1994).
... Robins (2000) found that the most common reason that students don't report educator sexual misconduct is fear that they won't be believed. [Sydney L. Robins, Protecting Our Students (Ontario, Canada, Ministry of Att'y Gen.2000)]. Research indicates that students have good reasons to suspect they won't be believed. Robins documents the case of a teacher... who was convicted of sexually abusing 13 students over a period of 21 years. Nearly all of the students reported this abuse at the time. However, school officials did not take these accusations seriously.
Overwhelmingly, the girls experienced a disastrous response when they told about [the teacher's] behavior. Many were disbelieved, some were told to leave schools, parents were allegedly threatened with lawsuits.
(Footnote omitted.) To hold school districts accountable for their investigations and teachers accountable for their conduct, but most importantly of all, to protect students, information must be available. When materials concerning allegations of teachers' sexual misconduct are available to the public, that information enables the public to oversee the agencies charged with the education and care of public school children for fully half of all their days, spanning a period of 12 years, thus carrying out the purposes of the PRA, and the possibility of disclosure can act as a powerful deterrent to sexual misconduct by educators.
¶ 79 For all of these practical reasons, information about an allegation where the sexual misconduct is unsubstantiated, including the teacher's identity, can constitute critical information that is necessary for objective oversight of the job that the public schools are doing to protect school children from teachers who engage in sexual misconduct involving children. Disclosure of the identities of the teachers who are alleged to have engaged in sexual misconduct involving students is therefore of legitimate public concern.
¶ 80 Finally, I am troubled by the majority's attraction to the rule that the identities of teachers who are subjects of unsubstantiated allegations should remain undisclosed because it is an easy rule to apply. I do not believe that the majority's conclusion conforms to the requirement that exemptions to the disclosure mandate of the PRA should be narrowly construed. See RCW 42.56.030 (the PRA "shall be liberally construed and its exemptions narrowly construed") (formerly RCW 42.17.251 (1992)); Brouillet, 114 Wash.2d at 793, 797, 791 P.2d 526; Hearst, 90 Wash.2d at 128, 580 P.2d 246. Instead, the majority's interpretation of the PRA narrows the requirements of disclosure while expanding the employee privacy exemption.

*161 CONCLUSION
¶ 81 The majority incorrectly determines what information is protected under the right to privacy, as this term is used in the PRA. It refuses to follow the court's previous cases describing the kind of facts the right to privacy protects. Properly applying the test we adopted in Hearst, which was expressly approved by the legislature, reports of allegations of sexual misconduct against children by their teachers, including the teachers' identities, must be disclosed whether the sexual misconduct is substantiated or not. In holding that only substantiated reports of sexual misconduct require disclosure of teachers' identities, the majority fails to follow the PRA and frustrates the enormously important goal of protecting children from predators. I dissent.
SANDERS and C. JOHNSON, JJ., concur.
NOTES
[1] "[U]nsubstantiated" means "not supported or borne out by fact." WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 2512 (2002).
[2] The legislature amended and recodified the PDA as the Public Records Act (PRA) in 2005, moving it from chapter 42.17 RCW to chapter 42.56 RCW, effective July 1, 2006. Laws of 2005, ch. 274. The Times' public disclosure request preceded the PRA, so this opinion refers to the PDA.
[3] A "`letter of direction'" is "a letter, memorandum or oral direction which does not impose punishment, but seeks to guide or direct the employee's future performance." Clerk's Papers (CP) at 112, ¶ 11. By contrast, a "`letter of reprimand'" constitutes "a letter or memorandum finding that the employee has engaged in significant misconduct and either formally reprimanding the employee or imposing restrictions on the employee's future assignments or duties." CP at 112-13, ¶ 11.
[4] The school districts released to the Times unredacted records of the teachers who are not currently parties to the present lawsuit.
[5] After reviewing the documentary record, the trial court made findings as to the adequacy of each of the school districts' investigations.
[6] The Court of Appeals refers to these 15 individuals as the "prevailing John Does." Bellevue John Does 1-11 v. Bellevue Sch. Dist. No. 405, 129 Wash.App. 832, 857, 120 P.3d 616 (2005).
[7] The Court of Appeals' opinion uses "patently" or "plainly" false interchangeably. We use "patently" unless quoting.
[8] The 12 teacher petitioners include Bellevue John Does 1, 2, 3, 4, 6, 7, and 9; Federal Way John Does 2 and 3; and Seattle John Does 3, 5, and 10.
[9] While we framed the first issue in our January 3, 2007 order accepting review as "whether allegations of sexual misconduct that remain unsubstantiated are exempt from disclosure under the [p]ublic [d]isclosure [a]ct," the question before us is simply whether the teachers' names and other identifying information may be released to the public. Wash. Supreme Court Order No. 78603-8 (Jan. 3, 2007). The school districts have already disclosed numerous records documenting the nature of the allegations, types of investigations conducted, and any resulting disciplinary actions. The names of the teachers involved were changed to "John Doe" pseudonyms and other identifying information was redacted. We must now decide whether the identities of teachers who are the subjects of unsubstantiated allegations of sexual misconduct should be released under the PDA.
[10] We do not reach teacher petitioners' constitutional challenge as reviewing courts "should not pass on constitutional issues unless absolutely necessary to the determination of the case." State v. Hall, 95 Wash.2d 536, 539, 627 P.2d 101 (1981).
[11] A "`[p]ublic record'" is "any writing containing information relating to the conduct of government... prepared, owned, used, or retained by any state or local agency." Former RCW 42.17.020(36) (2002), amended as RCW 42.17.020(41) (LAWS OF 2005, ch. 445, § 6). Bellevue John Doe 11 and Seattle John Doe 6 argue that unsubstantiated or patently false allegations of misconduct do not meet the definition of "public records" because, potentially, no government conduct exists. The absence of misconduct, however, is not necessarily the absence of conduct.
[12] This definition is similar to the definition of "personal information" found in other jurisdictions' public disclosure statutes. See, e.g., ALASKA STAT. 40.25.350(2) (2006) ("information that can be used to identify a person and from which judgments can be made about a person's character, habits, avocations, finances, occupation, general reputation, credit, health, or other personal characteristics"); CAL. CIV.CODE 1798.3(a) (West 2005) ("any information that is maintained by an agency that identifies or describes an individual, including, but not limited to, his or her name, social security number, physical description, home address, home telephone number, education, financial matters, and medical or employment history"); Jordan v. Motor Vehicles Div., 308 Or. 433, 441, 781 P.2d 1203 (1989) ("information specific to one individual").
[13] The Times asserts that "the conduct of public employees on the job is not a private matter under any formulation of privacy" because it does not "relate[] to `the intimate details of one's personal and private life.'" Suppl. Br. of Resp't Times at 2-3 (quoting Spokane Police Guild v. Liquor Control Bd., 112 Wash.2d 30, 38, 769 P.2d 283 (1989)). Former RCW 42.17.255 does not state or imply that the right to privacy is limited to the intimate details of one's personal and private life. Our case law is divided as to whether the privacy provision of the PDA pertains only to intimate details of one's personal and private life. Compare Koenig, 158 Wash.2d at 185, 142 P.3d 162, and Brouillet v. Cowles Publ'g Co., 114 Wash.2d 788, 797-98, 791 P.2d 526 (1990), and Brown v. Seattle Pub. Schs., 71 Wash.App. 613, 860 P.2d 1059 (1993), with Dawson, 120 Wash.2d at 797, 845 P.2d 995, and Spokane Police Guild, 112 Wash.2d at 39, 769 P.2d 283, and Cowles Publ'g Co. v. State Patrol, 109 Wash.2d 712, 748 P.2d 597 (1988) (plurality opinion).
[14] In Columbian Publishing Co. v. City of Vancouver, 36 Wash.App. 25, 27, 671 P.2d 280 (1983), an association of police officers voted no confidence in their police chief and then issued a press release noting their general concerns. The officers then provided specific complaints to the city. Id. The Court of Appeals determined the complaints dealt with the police chief's performance of his public duties and, hence, the chief did not have a right to privacy in such statements. Id. at 30, 671 P.2d 280. The complaining officers were deemed to have waived any right to privacy in their complaints by making the initial press release. Id.
[15] Prior to Dawson, the Court of Appeals held school district employees' performance evaluations and work records could be disclosed as long as the employees' names were redacted. Ollie v. Highland Sch. Dist. No. 203, 50 Wash. App. 639, 645, 749 P.2d 757 (1988). After Dawson, the Court of Appeals held the disclosure of documents relating to performance evaluations and documents containing general concerns about a principal's performance violated the principal's right to privacy. Brown, 71 Wash. App. at 619, 860 P.2d 1059.
[16] In determining whether disclosure of a performance evaluation would be highly offensive, we looked to other jurisdictions. Dawson, 120 Wash.2d at 796-97, 845 P.2d 995. Contrary to the dissent's assertion, dissent at 142 n. 3, we did not identify which items within a personnel file would be protected by the right of privacy. We noted that an employment record would contain "`references to family problems, health problems, past and present employers' criticism and observations, military records, scores from IQ [intelligence quotient] tests and performance tests ... and other matters, many of which most individuals would not willingly disclose publicly.'" Dawson, 120 Wash.2d at 797, 845 P.2d 995 (second alteration in original) (internal quotation marks omitted) (quoting Missoulian v. Bd. of Regents, 207 Mont. 513, 524, 675 P.2d 962 (1984)). Thus, contrary to the dissent's characterizations, Dawson did not limit its reasoning to "information obtained during employee evaluations," dissent at 157. 120 Wash.2d at 797, 845 P.2d 995. Information found within an employment record may be protected by the right of privacy regardless of whether it is obtained during or used for an employee evaluation.
[17] Contrary to the dissent's reasoning, dissent at 157, Cowles does not control our analysis of whether an unsubstantiated allegation bears on a teacher's performance. Cowles dealt solely with complaints against law enforcement officers sustained "after internal investigations conducted by their respective law enforcement agencies." 109 Wash.2d at 713, 748 P.2d 597. The complaints in Cowles were substantiated and, thus, represented actions taken by employees in the course of performing their public duties.
[18] Contrary to the trial court's reasoning, the offensive nature of disclosure does not vary depending on whether the allegation is substantiated or unsubstantiated. The offensiveness of disclosure is implicit in the nature of an allegation of sexual misconduct.
[19] As will subsequently be discussed, when allegations of sexual misconduct are unsubstantiated, the public may have a legitimate concern in the nature of the allegation and the response of the school system to the allegation. In this case, the school districts provided the Times with "numerous records documenting the nature of the allegation in each case, the grade level, the type of investigation conducted, and any disciplinary action taken. But the names of the teachers were changed to `John Doe' pseudonyms, and other identifying information was redacted." Bellevue John Does, 129 Wash.App. at 841, 120 P.3d 616. Because these portions of the records are not at issue, we do not address whether there is a legitimate public concern in such records.
[20] In Brouillet, there was no dispute between the parties as to whether the public had a legitimate concern in the reasons for revoking a teacher's certificate. 114 Wash.2d at 798, 791 P.2d 526.
[21] The Times and the Court of Appeals contend that a teacher's identity must be disclosed even if the allegations are unsubstantiated because if a teacher's record includes several unsubstantiated complaints, "the pattern is more troubling than each individual complaint." Bellevue John Does, 129 Wash.App. at 856, 120 P.3d 616. However, if teachers' identities are replaced with pseudonyms, members of the public will still be able to track and determine whether a certain teacher is the subject of numerous unsubstantiated allegations. Amicus Washington Education Association (WEA) suggests, "[a]t the time of an in camera review, a trial court could fashion a remedy for this potential problem by requiring the use of the same numerical identifier for a John Doe who may be accused of multiple unsubstantiated allegations." Suppl. Br. of Amicus WEA at 7 n. 2. The legislature could fashion such a tracking system to allow for public oversight while protecting individual teachers' privacy rights.
[22] Importantly, teacher petitioners remind us that "[a]n allegation is not a fact, and no matter how many false or unsubstantiated allegations might be coupled together, they are nonetheless just allegations." Suppl. Br. of Bellevue John Does at 16.
[23] Respondent Federal Way School District (FWSD) aptly observes, the approach that [the trial judge] ... eventually adopted  which is in many cases

dependent upon a determination of the adequacy of each investigation of misconduct  would not produce the kind of clear rule that public entities would be able to apply with confidence in future cases. To the extent such unpredictable  if not entirely subjective  rules can be avoided, FWSD urges the Court to do so.
Br. of Resp't FWSD at 5 (citation omitted).
[24] The dissent argues school districts are unlikely to conduct adequate investigations of allegations of sexual misconduct because of the threat of potential lawsuits. Dissent at 157-58. The dissent fails to recognize that a school district may be held liable for failing to adequately investigate such a complaint and continuing to employ a teacher. Peck v. Siau, 65 Wash.App. 285, 288-92, 827 P.2d 1108 (1992) (discussing grounds for negligent retention of a teacher); see Christensen v. Royal Sch. Dist. No. 160, 156 Wash.2d 62, 76, 124 P.3d 283 (2005) (Madsen, J., concurring in part, dissenting in part) (a district has a duty to investigate allegations of sexual abuse as part of its supervisory duty).
[25] As mentioned earlier, Brouillet stands only for the proposition that known sexual misconduct on behalf of teachers is of legitimate public concern, and the Court of Appeals' reliance on Brouillet is misplaced.
[1] When the statutes formerly appearing in chapter 42.17 RCW concerning public records were recodified at chapter 42.56 RCW, the legislature stated that the chapter "may be known and cited as the public records act." RCW 42.56.020. I cite the statutes as they have been recodified and refer to the act by its present title: the Public Records Act (PRA). The majority refers to the act as it was previously known (the public disclosure act) because the public records request in this case occurred before recodification of the act.
[2] "9.6 percent of all students in grades 8 to 11 report contact and/or noncontact educator sexual misconduct that was unwanted." EDUCATOR SEXUAL MISCONDUCT at 17-18. 6.7 percent reported physical sexual abuse. Id. at 18. These conclusions are based on an analysis that used data collected for the American Association of University Women in the fall of 2000 by Harris International, whose trained interviewers administered a survey to a "sample ... drawn from a list of 80,000 schools to create a stratified two-stage sample design of 2,065, 8th to 11th grade students." EDUCATOR SEXUAL MISCONDUCT at 16-17. Representative subpopulations were included in the sample. Id. at 17. "The findings can be generalized to all public school students in 8th to 11th grades at a 95 percent confidence level with a margin of error of plus or minus 4 percentage points." Id. The report indicates that these findings underestimate educator sexual misconduct in schools. Id. at 18.
[3] The court held that the right of privacy includes an "`evaluation of an individual's work performance, even if favorable.'" Dawson, 120 Wash.2d at 796, 845 P.2d 995 (quoting Celmins v. Dep't of Treasury, 457 F.Supp. 13, 15 (D.D.C. 1977)). The court explained: "`"Employment records would reasonably contain, among less sensitive information, references to family problems, health problems, past and present employers' criticism and observations, military records, scores from IQ [intelligence quotient] tests and other performance tests ... and other matters, many of which most individuals would not willingly disclose publicly."'" Dawson, 120 Wash.2d at 797, 845 P.2d 995 (quoting Missoulian v. Bd. of Regents, 207 Mont. 513, 524, 675 P.2d 962 (1984) (quoting Mont. Human Rights Div. v. City of Billings, 199 Mont. 434, 442, 649 P.2d 1283 (1982))).
[4] Repeated accusations by different children leveled at the same teacher may suggest that a real threat to students exists. That information is unattainable under the PRA if teachers' identities are not disclosable, and replacing a teacher's name with a number, as the majority suggests is an alternative to naming teachers, will not protect students whose parents cannot attach the number to a particular teacher.